

**American Arbitration Association**
**Construction Industry Arbitration Tribunal**

| | |
|---|---|
| South LA Contractors, LLC,     ) | |
|     ) | |
|     Claimant/Counter-     ) | |
|     Respondent,     ) | |
|     ) | |
| v.     ) | |
|     )     AAA Case No. 01-21-0018-1725 | |
| FMGI, Inc.     ) | |
|     ) | |
|     Respondent/Counter-     ) | |
|     Claimant.     ) | |
|     ) | |

## <u>REASONED AWARD</u>

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, hereby AWARD as follows:

This matter came on for hearing on October 14-16, 2024 at the offices of Simon, Peragine, Smith & Redfearn, L.L.P., before Arbitrator, H. Bruce Shreves, who was duly appointed by the American Arbitration Association.

The parties, South LA Contractors, LLC ("SLC") and FMGI, Inc. ("FMGI"), submitted excellent pre-hearing and post-hearing briefs. In addition, the parties made part of the arbitration the pre-trial stipulation of fact which is attached hereto as Exhibit 1.

The attorneys for the parties were:

Mark W. Mercante and Nicholas R. Pitre for FMGI

Robert A. Robertson for SLC

The hearing involved a number of witnesses and numerous exhibits submitted by both parties.  The witnesses who testified in this case were as follows:

Brad Melancon - Owner and Manager SLC

Tom Sutera – SLC

Jeremy Johnson – PSI Representative

Leo Keegan – PSI Representative

Mike Santiago – FMGI Project Manager

Philip Taylor – Former SLC employee

Jesse Arnold – SLC Expert

Wes Eustis – FMGI Expert

## FACTUAL SUMMARY

This dispute arises out of a subcontract ("Subcontract") between FMGI and SLC for SLC to perform demolition, site work, and drainage for the construction of a new Floor and Décor building located in Baton Rouge, Louisiana (the "Project").  The Subcontract was dated August 8, 2021, with an effective date of August 26, 2021.  The Subcontract was attached to the Stipulation of Facts which is attached hereto as Exhibit 1.

Both parties have submitted claims in excess of $1,000,000.  SLC's claim is as follows:

| $165,570.00 | Haul off and dispose of unsuitables |
| $456,000.00 | Replace the unsuitables |
| $54,435.10 | Lost profit |
| $126,730.00 | Amount owed under Pay Application 3 |
| $31,630.00 | Retainage |

| | |
|---|---|
| $71,300.00 | Crushed Concrete |
| $905,665.10 | **Total Damages** |
| <u>$161,344.86</u> | Judicial Interest Calculated from January 1, 2022 |
| $1,067,009.96 | **Total Damages Plus Interest** |

The FMGI claim is as follows:

| | |
|---|---|
| Cost Incurred after Termination | $1,660,722.35 |
| Less Offsets | $77,400.00 |
| Less Contract Balance | $272,175.50 |

**Final FMGI Claim = $1,311,146.85.**

Among the exhibits attached to the Subcontract is Exhibit A, Scope of Work. That Scope is attached hereto as Exhibit 2. Generally, the SLC requirements were as follows:

Supply and Install Erosion Control

Demolish Areas as Specified on Plans and Clear Site for Improvements

Undercut and Import Soils as Necessary for Building Pad and Site Concrete

Furnish and Install Stone under Building Slab

Supply and Install Subgrade and Base per Plans

The original Subcontract amount was $762,945.50. It is undisputed that FMGI paid SLC the amount of $490,770, leaving a subcontract balance of $272,175.50. During the course of the Project payment applications were submitted by SLC to FMGI. Mr. Melancon testified that SLC only completed at most 60% of the Subcontract, even though their final pay application claimed 82.92% complete. FMGI witnesses testified that the SLC Pay Applications were always overstated. Mr. Melancon also testified that FMGI paid them in excess of $497,700, resulting in an overpayment to SLC of at least $33,002.70.

The Subcontract was to be completed according to a schedule which had been given to SLC, according to the testimony of Mike Santiago, the Project Manager for FMGI.[1]  The original schedule was delayed by Hurricane Ida. The final deadline for completion of SLC's scope of work were as follows:

September 17, 2021 – Completion of demo and site work

October 15, 2021 – Completion of building pad

October 29, 2021 – Completion of Site Grade

January 7, 2022 - Completion of Storm Water Drainage

It appears that SLC never met a single completion deadline for any of the scopes of work.  In fact, a large amount of these items remained incomplete at the time that FMGI terminated SLC for default on December 30, 2021.  At that time, the demolition and site clearing were over three months behind schedule and the building pad was two and one-half months late, with site grading two months behind, and they were on a similar late track with storm drainage.

Evidence also showed that when FMGI finally did terminate SLC's services on December 30, 2021, the following work was incomplete:

Large amounts of giant concrete blocks from demotion (*see* photos – FMGI Ex. 160);

At least 16,000 square feet of concrete slab and pavement were not demolished;

No work had begun on site work outside of the building pad, including entire parking lot;

SLC had not completed site grading.

_____

[1]    SLC said they did not receive all of the schedules, but Mike Santiago stated, and their evidence showed, that the schedules were discussed at every sub-meeting (See FMGI Ex. 100)

The performance of storm drainage was even later. Storm drainage completion was extended to January 20, 2022, but as of December 9, 2021 SLC had not even delivered approved structures or pipe to the Project. When this was supplied, FMGI learned that a proposed subcontractor, Coastal Culvert and Supply ("Coastal"), had cancelled SLC's order due to prior non-payment on other projects. SLC had then hired Coburn Supply Company, Inc. ("Coburn") to supply the structures, but the structures were not consistent with the Coastal shop drawings that had been approved by the architect. Philip Taylor, one of SLC's former employees, testified that in the one year period that he worked for SLC, the company never finished one project.[2]

In addition, there were a number of subcontractors of SLC that were not paid and filed liens against the Project. Only two months after the mobilization of the Project, FMGI received a $74,316 notice of non-payment from Driveshaft Construction, LLC. It also turned out that not only had SLC not paid Coastal, but it had not paid Coburn for materials ordered for the Project. In addition to the claim by Coburn, Ivy Construction, Driveshaft and Coburn also recorded liens or claims on the Project. Those liens were either settled, paid by FMGI, or are still outstanding.

## TERMINATION FOR DEFAULT

The claims by SLC against FMGI, and FMGI against SLC, are based on whether FMGI properly terminated the Subcontract on or about December 30, 2021. It is my finding that at that time, if not before, SLC had committed numerous defaults on the Project, all of which were noticed within the contractual 72 hour period, and all of which justified termination for default on December 30. The defaults of SLC included the

---

[2]    Mr. Taylor testified that he had a previous federal conviction involving a "kickback scheme," something he did disclose to Mr. Melancon.

following:

1.      SLC was 3.5 months late completing demolition and site clearing, with at least 16,000 square feet of concrete left to demolish, huge mounds of concrete boulders and rubble remaining across the Project;

2.      SLC was 2.5 months behind schedule installing the building pad, which SLC further left unprotected;

3.      SLC's completion of site grading was 2 months late, with virtually no site work performed outside of the building pad;

4.      SLC had not started the storm drainage and did not even have new approved submittals for the drainage structures, much less all structures and pipe on site, even though the work was scheduled to commence a month earlier on November 29 and the January 7 completion deadline was only a week away;

5.      Instead of correcting its performance errors and accelerating its work, on December 28, FMGI caught SLC attempting to misappropriate and sell for its own profit crushed concrete from the Project site that did not belong to SLC and was needed for construction of the building pad;

6.      FMGI was on notice of at least 3 outstanding nonpayment claims by SLC's subtiers; and

7.      One of SLC's subtiers, Driveshaft, had an outstanding lien against the Project (which was filed on November 12, 2021).

## SLC'S CLAIM FOR ADDITIONAL AMOUNTS DUE TO "UNSUITABLES"

When SLC mobilized for the Project and began excavation for the building pad, it ran into two separate, distinct materials that were the subject of this claim.  First, SLC discovered an amount of trash, which was described by Professional Services Industries, Inc. ("PSI") as wood, cinder blocks, bricks, and piping.  Second, unsuitable soil was removed and replaced with imported soil.  The Plans and Specifications required SLC to remove and replace soil with imported fill, unless the soil that was removed could be

"reconditioned."  Apparently, none of the soil that was removed could be reconditioned and, therefore, virtually the entire amount of soil materials removed from the site had to be replaced with imported soil.  PSI, not FMGI, determined if soil could be reconditioned.

The Subcontract provided that PSI would record the total outbound count of cubic yards removed from the site.  PSI recorded the total outbound amount of 11,038 cubic yards.

On October 24, 2021, SLC sent an email to FMGI as follows:

> We need some type of written authorization on this.  Our unit costs for excavating and replacing soil usually runs at $24 a cy. To haul and dispose of the trash being dug up over there would probably be $15/cy to haul and dispose of.

FMGI understood that language to provide that SLC's price of $24/cy was to remove any excess unsuitable soil and replace with imported fill, and the separate price of $15/cy was to dispose of trash discovered (which SLC claims was about 380cy).

SLC took the position that the email meant that they would receive not only the $24/cy for removing and replacing soil, but a total of $39 for every cubic yard removed whether it was trash or soil, in other words the combination of $24 plus $15, for all soil removed and replaced.

I think that email is clear that removing and replacing soil runs at $24/cy.  If the soil that was removed could be reconditioned so much the better, but if not, the Subcontract required that imported soil be replaced for a total of $24cy for the removing and replacing. The $15cy was only for trash. That trash was removed to a landfill. PSI's quantification of 11,038 cubic yards, which was a truck count of "loose dirt," was what FMGI approved. SLC claimed it should be paid for at least 19,161 cubic yards, based on what SLC claimed was the quantity required to replace the 11,038 cubic yards of loose, uncompacted soil

that was removed by PSI. FMGI's expert, Wesley Eustis, explained that this was illogical, and that 11,038 was equivalent to 7,813, which was the "in bank" soil, but once the soil is removed and put into a truck, it expands. Said another way, the 7,813 cubic yards undercut required by the plans, when multiplied by 1.41 swell factor, equaled 11,016.33cy, which is very close to the truck count of PSI. Later FMGI submitted a change order to the Owner ("F&D") for the full 11,038 cy, but agreed to an adjustment for the original scope quantity of 7,813 cubic yards. FMGI then revised its claim to F&D with a final quantity of 3,255, resulting in the payment to FMGI of $145,125. Of that amount, the amount owed to SLC would be at most $78,120, which I agree would be owed and would be an offset to whatever claim FMGI has against SLC.[3]

Wes Eustis, the expert for FMGI, and the original engineer on the Project who stamped the plans, testified as an expert for FMGI that the fact that there was more fill imported at the site than was removed was easily explained by the fact that there were other areas where imported fill was used on the Project, not just on the building pad. Otherwise, it would make no sense that an undisturbed amount of soil of 7,813cy would need to be replaced with 19,000 cubic yards of imported soil. He testified that the plans and specifications which he stamped provided for other areas where imported fill would be required.

## FMGI DAMAGES

A.    **Damages Related to Subtier Claims and Liens Against the Project. - $337,075.49**

SLC filed its own lien against the Project, and three of SLC's suppliers, Ivey,

---

[3]    Wes Eustis, FMGI's expert, did not think that FMGI nor SLC should be paid anything by the Owner on that claim, but since they were paid $145,125, I agree that SLC should have been paid $78,120.

Driveshaft, and Coburn also recorded liens for claims.  FMGI has paid $100,154 in premiums for release of lien bonds on these liens which they are properly entitled to recover.

FMGI also paid Coburn $15,825.75 to revolve its liens and claims, and settled with Driveshaft for $79,959.  FMGI has also been sued for $101,913 by Ivey on its lien, and that matter has still not been revolved.

The total amount incurred or pending as of this date for nonpayment of SLC's subcontractors is $337,075.

## FMGI COSTS TO COMPLETE SLC'S WORK

After the termination for default, a large amount of work remained to be completed, which had to be done by various subcontractors that were brought in by FMGI.  Those costs were itemized in FMGI's Exhibit 106.1.  Mr. Santiago confirmed that they were accurate and totaled $782,326.25.  The completion work was as follows:

> All excavations and site work outside the limited area of the building pad, including the entire parking lot;
>
> Nearly all drainage;
>
> Completion of the building pad;
>
> Excavation and preparation for the truck dock;
>
> Huge mounds of uncleared demolition debris, including giant concrete blocks too large to crush;
>
> No effective erosion control in place;
>
> Large undemolished areas of preexisting concrete slab and driveway; and
>
> Final grading of the entire site.[4]

---

[4]    See FMGI Exhibit 106.1.

I will deduct $15,443 from this amount for the cutting of lime in the base area, which was not in the FMGI plans.

### Pre-Award Interest

Louisiana law does allow for interest on unpaid amounts. The contract itself allows for interest on the unpaid <u>award</u>, at the Prime Interest Rate published in the Wall Street Journal (Contract ¶24.2).

I will award interest on this award at the interest rate provided in the Contract from the date of the Award until paid, but no pre-award interest.

### Attorneys' Fees and Costs - $400,223.25

Attorneys' fees submitted by FMGI, who is the prevailing party, were $439,446. The attorneys' fees are within the discretion of the Arbitrator, I will award $325,000 in attorneys' fees to FMGI.

### Total FMGI Damages

| | |
|---|---|
| $337,075 | FMGI Payments on Claims by SLC Subtiers and Liens |
| $766,883 | FMGI Completion Costs |
| <u>$325,000</u> | Attorneys' Fees and Costs |
| $1,428,958 | |

### SLC Offsets

| | |
|---|---|
| $272,175 | Subcontract Balance |
| <u>$77,400</u> | Unsuitable Change Order |
| $349,575 | Total |

Therefore, the total due FMGI from SLC, less offsets, is $1,079,383.

01-21-0018-1725                                                                 10

**Therefore, FMGI is awarded $1,079,383 from SLC.**

The administrative fees and expenses of the American Arbitration Association totaling $22,400.00, and the compensation and expenses of the arbitrator totaling $31,888.07 shall be borne equally.

This Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims and counterclaims not expressly granted herein are hereby, denied.


_____
H. BRUCE SHREVES, ARBITRATOR

12 - 20 - 2024
_____
DATE

**American Arbitration Association**

| | | |
|---|---|---|
| South LA Contractors, LLC, | ) | |
| | ) | |
| Claimant/Counter- | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | **AAA Case Number 01-21-0018-1725** |
| | ) | |
| FMGI, Inc. | ) | |
| | ) | |
| Respondent/Counter | ) | |
| Claimant. | ) | |

**Joint Statement of Uncontested Facts**

In accordance with the May 28, 2024 Preliminary Hearing Scheduling Order # 5 in this matter, FMGI, Inc. and South LA Contractors, LLC submit the following list of facts that are uncontested. By submitting this document, the Parties agree that certain documents and/or written communications exist and maintain the documents and communications are the best evidence of their own contents and meaning. The Parties do not agree as to any additional information included herein that explains or provides additional commentary as to the contents of the documents and/or communications.

**General Facts**

1.    The dispute concerns work performed by South LA Contractors, LLC (**"South LA Contractors"** or **"Subcontractor"**) as a subcontractor to FMGI, Inc. (**"FMGI"** or **"Contractor"**) related to the construction of a store (**"Project"**) located at 9969 Professional Boulevard, Baton Rouge, Louisiana 70809 (**"Project Site"**) and owned by Floor and Décor Outlets of America, Inc. (**"Floor and Décor"** or **"Owner"**).

2.    On June 30, 2021, South LA Contractors issued an Estimate for the Project to FMGI, in which a portion of it reads:

| Mobilization/Demobilization | $ 8,500.00 |
|---|---|
| Erosion Control | $ 12,538.00 |



EXHIBIT
1

South LA Contractors, LLC, Claimant and Counter-Respondent, v.
FMGI, Inc., Respondent and Counter-Claimant,
AAA Case Number 01-21-0018-1725
Joint Statement of Uncontested Facts
Dated: September 19, 2024
Page 2 of 26

| Demolition | $212,266.70 |
| Site Work | $393,988.50 |
| Drainage (Storm) | $141,007.00 |
| Total | $768,300.20 |

3.    South LA Contractors' June 30, 2021 Estimate provides in part:

| 26 | **Site Work** | | |
| 27 | 6" Stripping | 3941.00 | CY |
| 28 | Import | 8788.00 | CY |
| 29 | Haul Off | 7860.00 | CY |

\* \* \*

\*EXCLUSIONS AND CLARIFICATION\*
Pricing assumes reuse of excavated on site material as fill
Pricing is for 6" grubbing only

\* \* \*

Pricing is only for work as detailed above. Further, our pricing is quatified (sic) by the drawings only.

**\*UNIT PRICES\***
Removal and Replacement of Unsuitable Soils - $24.00/CY
Fill Dirt Delivered, Spread and Compacted - $14.00/CY

4.    The June 30th Estimate was attached to, the Letter of Intent issued by FMGI to South LA Contractors on August 4, 2021. The Letter of Intent deducted $17,266.70 from the Demolition scheduled item.

5.    The project manager for Floor and Décor was Peter Monte.

6.    The division manager for FMGI on this Project was Chuck McGee ("**McGee**" or "**FMGI Division Manager**"), the project manager for FMGI on this Project was Mike Santiago ("**Santiago**" or "**FMGI Project Manager**"), and the superintendent for FMGI on this Project was Tony Verzi ("**Verzi**" or "**FMGI Project Superintendent**").

7.    Brad Melancon ("**Melancon**") is the owner of South LA Contractors.

8.    Melancon was South LA Contractors' project manager for the Project.

9.    The first page of the Subcontract Agreement provides in part:

| **RETAINAGE PERCENTAGE:** | **10%** |

South LA Contractors, LLC, Claimant and Counter-Respondent, v.
FMGI, Inc., Respondent and Counter-Claimant,
AAA Case Number 01-21-0018-1725
Joint Statement of Uncontested Facts
Dated: September 19, 2024
Page 3 of 26

10.    The first page of the Subcontract Agreement provides in part that "Subcontractor agrees to furnish and pay for all materials, labor, ~~scaffolding,~~ equipment, tools, ~~appliances,~~ and everything necessary for the complete execution of Site Work (Scope of Work) for the Project for Owner in accordance with the Contract Documents all of which are made a part of this Subcontract Agreement."

11.    Section 1.3 of the Subcontract Agreement provides as follows:

"The following terms, when capitalized, shall have the meanings set forth in this Section 1: …. 'Claim' means any type or manner of claim, cost, expense, or liability (including reasonable attorneys' fees), attributable to bodily injury, personal injury, sickness, disease, or death, or to damage to or destruction of property (including loss of use of such property), caused in whole or in part by any act or omission of Subcontractor or any person acting on behalf of Subcontractor, or arising out of, resulting from, or occurring in connection with the performance of any portion of the Scope of Work by Subcontractor, its subcontractors, or their agents or employees, or someone for whom Subcontractor is responsible ~~whether or not caused in part by the active or passive negligence or other fault of Contractor, Owner, or other person or entity being indemnified against or held harmless from and against such Claim~~."

12.    Section 1.5 of the Subcontract Agreement provides as follows:

"'Contract Documents' means this Agreement, the Drawings and/or Specifications, any General Terms and Conditions applicable to the Project, submittal approvals, the Prime Contract, any addendum, attachments or exhibits to those documents, and any addendum to modification to any of those documents, including, but not limited to, change directives or change orders. ~~We need a copy of the prime contract.~~ Exhibit B of Prime."

13.    Section 2.1 of the Subcontract Agreement provides as follows:

"Subcontractor has adequately investigated the nature and condition of the Project location, has familiarized itself with all conditions of the Project that may affect the work, has familiarized itself with the plans and specifications for the Project, and has entered into this Subcontract Agreement based on its own investigation and evaluation ~~and not in reliance on any representation (oral or written) of Contractor or any other party concerning the Project location, its conditions, or the plans~~."

14.    Section 4.2 of the Subcontract Agreement provides as follows:

*__Completion Date.__* The 'Completion Date' is the date set forth on Page 1

South LA Contractors, LLC, Claimant and Counter-Respondent, v.
FMGI, Inc., Respondent and Counter-Claimant,
AAA Case Number 01-21-0018-1725
Joint Statement of Uncontested Facts
Dated: September 19, 2024
Page 4 of 26

of this document unless an extension is agreed to in a written document signed by an authorized representative of the Contractor. The Project Superintendent is not authorized to amend or modify either the Commitment Date or the Completion Date. Subcontractor shall not be entitled to rely on any oral statement or assurance made by any employee of Contractor extending either the Start Date or the Completion Date as stated in this Agreement."

15.  Section 6.2.2 of the Subcontract Agreement provides as follows:

"Should Subcontractor fail to make up for the time lost by reason of such delay, Contractor shall have the right to cause other subcontractors and/or sub-subcontractors of the Project to work overtime and to take whatever other action it deems necessary to avoid delay in the completion of the Work and of the Project, ~~and the cost and expense of such overtime and/or such other action shall be borne by Subcontractor.~~"

16.  Section 12.1 of the Subcontract Agreement provides as follows:

"***Faulty Workmanship.*** If Contractor and testing lab ~~in its sole and absolute discretion~~, determines that Subcontractor's workmanship is improper, Contractor may withhold payment until the workmanship determined to be improper is remedied. If after a reasonable time Contractor determines that Subcontractor is unable or unwilling to remedy faulty workmanship, Contractor may engage whoever its desires to correct the problem. Contractor may notify Subcontractor ~~either orally or~~ in written form of that decision. Subcontractor agrees that if this situation occurs, it is responsible for any costs associated with the repair and agrees that Contractor may withhold the amount from any amounts due to Subcontractor under this Agreement as an option for securing payment."

17.  Section 12.2 of the Subcontract Agreement provides as follows:

"~~Financial Performance. If Contractor, in its sole absolute discretion, determines Subcontractor will be unable to finish its Scope of Work for the unpaid amount remaining unpaid under this Agreement, Contractor has the right to withhold any payment that may be due to Subcontractor, and/or may terminate Subcontractor if Subcontractor cannot or will not provide Contractor with adequate written assurances that it has the financial ability to complete its Scope of Work. If there are insufficient funds owing to Subcontractor to complete the work, Contractor shall have a lien on all of Subcontractor's materials stored or located at the Project.~~ Failure of Subcontractor to properly pay its Sub-subcontractors, laborers, materialman, suppliers, vendors, or any other entity employed by

South LA Contractors, LLC, Claimant and Counter-Respondent, v.
FMGI, Inc., Respondent and Counter-Claimant,
AAA Case Number 01-21-0018-1725
Joint Statement of Uncontested Facts
Dated: September 19, 2024
Page 5 of 26

Subcontractor shall constitute a material breach of this Agreement only for work/materials we have been paid for."

18.    Section 12.4 of the Subcontract Agreement provides as follows:

"*Claims.* If Subcontractor causes a claim to be filed against Owner, Contractor or itself ~~or if there is reasonable evidence indicating a reasonable probability that such a claim will be filed,~~ Contractor may terminate this Agreement. ~~If this occurs, the Subcontractor agrees it is responsible for any and all payments incurred by the Contractor necessary to find and contract with a new subcontractor.~~ If one of Subcontractor's sub-subcontractors, laborers, materialmen, suppliers, or vendors issues a stop payment notice to Contractor, or files a claim of lien either against funds owed from Contractor to Subcontractor, or files a claim of lien against the Project, Contractor has the right, but not the duty, to withhold from any amounts due to Subcontractor up to and including twice the amount stated in the stop payment notice or lien only for work/materials we have been paid for."

19.    Section 12.5 of the Subcontract Agreement provides as follows:

"*Abandonment.* ~~If, for whatever cause or reason, the Subcontractor refuses to perform any part of its duties and/ or obligations~~ [U]nder this Subcontract Agreement, Contractor may ~~immediately~~ determine this Agreement to be in default and may take ~~whatever~~ remedy, ~~in its sole and absolute discretion it believes to be~~ reasonable to cure the Subcontractor's breach, ~~including, but not limited to, all the remedies mentioned throughout this Agreement. A dispute between the parties of this Agreement and/ or with the Owner, including a dispute concerning the payment or non- payment of funds that the Subcontractor contends are due under this Agreement, does not constitute a proper legal reason for the Subcontractor to cease performance under this Agreement. Acceptance of this Agreement by the Subcontractor either by signature or performance indicates its willingness to abide by these terms.~~ Subcontractor acknowledges the importance of a harmonious relationship and agrees to utilize the dispute resolution mechanisms in this Agreement as its sole remedy for resolving disputes. Subcontractor shall have the right to demob the project for non-payment after seven (7) days written notice to Contractor."

20.    Section 13.1 of the Subcontract Agreement provides as follows:

"*Self-Help.* Contractor has the right to take any action under Section 13.2 of this Agreement if Subcontractor ~~, at any time and for any reason~~ if the Subcontractor after 72 hours written notice to Subcontractor:

13.1.1.  Fails, refuses, or neglects to supply sufficient properly skilled

South LA Contractors, LLC, Claimant and Counter-Respondent, v.
FMGI, Inc., Respondent and Counter-Claimant,
AAA Case Number 01-21-0018-1725
Joint Statement of Uncontested Facts
Dated: September 19, 2024
Page 6 of 26

workmen

13.1.2. Fails, refuses, or neglects to supply the proper quality or quantity of materials, tools, or equipment,

13.1.3. Fails to provide adequate, competent supervision for continual, expeditious prosecution of the work;

13.1.4. Fails to prosecute the work with continuous promptness and diligence, or

13.1.5. Fails in the performance of any part of this Agreement, whether during or subsequent to the period of performance under this Agreement,"

21.    Section 13.2 of the Subcontract Agreement provides as follows:

"*Notice Period.* Contractor shall have the right and option, at its election, after ~~Forty-eight (48)~~ 72 hours' notice to Subcontractor to:

13.2.1. Provide such workmen, materials, tools, equipment, and/ or supervision as Contractor, in its sole and absolute discretion, deems appropriate to prosecute the work with due diligence, and Contractor has the right to deduct the cost of providing such workmen, materials, tools, equipment, and/ or supervision from any money due or to become due to Subcontractor; or

13.2.2. Enter on the premises of the jobsite, take possession of all materials ~~or other appliance of any kind~~, terminate Subcontractor's work under this Agreement, and employ any and all persons and materials necessary to complete the work in a prompt and diligent manner."

22.    Section 13.6 of the Subcontract Agreement provides as follows:

"*Manner of ~~Forty-Eight (48)~~ 72 Notice.* Notice to Subcontractor under this Agreement may be given ~~either orally or~~ in writing to Subcontractor by Contractor. ~~How notice is given to Subcontractor is solely within the sole and absolute discretion of Contractor. Only one such notice shall be required and any notice provided in the manner provided in this Section is continuous and covers any subsequent or recurring default after the initial default and Subcontractor's curing of that initial default shall not constitute a waiver of Contractor's rights under this Agreement. Contractor may exercise those rights when a subsequent or recurring default occurs without the necessity of giving Subcontractor any additional notice.~~"

23.    Section 13.7 of the Subcontract Agreement provides as follows:

"*Withholding Funds and Payment to Others on Termination of Subcontractor.* Subcontractor shall be obligated for any funds expended by Contractor in retaining others to complete Subcontractor's Scope of

South LA Contractors, LLC, Claimant and Counter-Respondent, v.
FMGI, Inc., Respondent and Counter-Claimant,
AAA Case Number 01-21-0018-1725
Joint Statement of Uncontested Facts
Dated: September 19, 2024
Page 7 of 26

Work after Subcontractor is terminated. Contractor has the right to withhold such funds from any amount due or to become due to Subcontractor. If the amounts remaining to be made to Subcontractor on work completed by it before it was terminated are less than the funds expended by Contractor completing Subcontractor's scope of work, Subcontractor is obligated to pay Contractor the difference. That Subcontractor claims that it could have obtained the workmen, materials, tools, equipment, and/or supervision at a lower rate than that paid by Contractor shall not affect, or be a defense to, any deduction or damages for which this Agreement provides."

24.    Section 15.1.1 of the Subcontract Agreement provides as follows:

"Subcontractor agrees and understands that any payment it may receive or believe it is owed is conditioned on the occurrence of all of the following:

15.1.1.1.    Approval or acceptance of Subcontractor's work by Owner, and/or Architect, and/or Contractor, and/or the governing/ approving authority as provided for in any of the Contract Documents.

15.1.1.2.    ~~Receipt of funds by Contractor from Owner applicable to the pay request or application (Interim or Final Payment request) submitted by Subcontractor to Contractor and,~~ net 30 days after invoice date

15.1.1.3.    Fulfillment of all contractual responsibilities by Subcontractor as set forth in this Agreement.

25.    Section 15.1.3 of the Subcontract Agreement provides as follows:

"~~If Owner or its representative fails to promptly pay, partially pays, or fails to ever pay, Subcontractor knowingly and willingly accepts such risks as a condition of this Agreement and so acknowledges that Contractor is not liable for any part of the unpaid amount under any theory of law.~~ The provisions of this Agreement concerning the payment to Subcontractor will control the obligation of Contractor to pay Subcontractor shall control over any other contract or agreement between Contractor and any other person touching or concerning this Project. ~~Subcontractor acknowledges and agrees that it is not an intended third-party beneficiary of the contract or agreement between Owner and Contractor. Should Subcontractor bring a claim against Contractor for any funds owed under a payment application on which Contractor has not received payment from Owner, Subcontractor shall pay all actual costs and reasonable attorneys' fees incurred by Contractor in getting such claim dismissed.~~"

26.    Section 15.1.5 of the Subcontract Agreement provides as follows:

"NOTHING    CONTAINED    WITHIN    THIS    SUBCONTRACT

South LA Contractors, LLC, Claimant and Counter-Respondent, v.
FMGI, Inc., Respondent and Counter-Claimant,
AAA Case Number 01-21-0018-1725
Joint Statement of Uncontested Facts
Dated: September 19, 2024
Page 8 of 26

AGREEMENT SHALL BE INTERPRETED AS A PROSPECTIVE WAIVER OF ANY LIEN RIGHTS OF ANY OF THE PARTIES."

27.    Section 15.3.2 of the Subcontract Agreement provides as follows:

"Subcontractor agrees and understands that it will receive its final payment under the following conditions:

15.3.2.1.    ~~If and only if the Owner or its agent makes such payment to Contractor.~~

15.3.2.2.    ~~Subcontractor will receive the total amount of the balance only if the Owner pays the complete balance to Contractor. Failing full payment, Subcontractor agrees to accept any partial amount paid by the Owner to Contractor.~~

15.3.2.3.    Completion of all Subcontractor's work.

15.3.2.4.    Acceptance of that work by the Owner.

15.3.2.5.    Furnishing to Contractor of evidence by Subcontractor to Contractor's satisfaction that Subcontractor has paid, in full (if paid in full), all labor, material accounts, and applicable taxes incurred by Subcontractor in connection with this Project.

15.3.2.6.    The execution and delivery by Subcontractor to Contractor of the final lien waiver.

15.3.2.7.    ~~Receipt of final payment for that work by Contractor from the Owner.~~"

28.    Section 23 of the Subcontract Agreement provides in part as follows:

"**Time of the Essence of Agreement.** Time is of the essence of this Agreement and any breach of this Agreement shall go to the essence of the Agreement. Subcontractor, in agreeing to complete the Scope of Work within the time for which this Agreement provides, ~~has taken into consideration and made allowances for all hindrances and delays incident to its work.~~"

29.    Section 24.1 of the Subcontract Agreement provides as follows:

"24.1.1.    Any claim by Subcontractor must be submitted to Contractor, in writing, within Seven (7) days after Subcontractor first recognizes the condition giving rise to such claim or within Seven (7) days after Subcontractor first recognizes the condition giving rise to the claim, whichever is later.

24.1.2.    Subcontractor shall provide Contractor with all the particulars of the claim including all supporting documentation within Thirty (30) days after the notice of the claim is delivered, unless Contractor agrees, in writing, to an extension of time. Failure to submit all of the particulars of the claim, including all supporting

South LA Contractors, LLC, Claimant and Counter-Respondent, v.
FMGI, Inc., Respondent and Counter-Claimant,
AAA Case Number 01-21-0018-1725
Joint Statement of Uncontested Facts
Dated: September 19, 2024
Page 9 of 26

documentation, within the time provided in Section 24.1.1 and this Section shall relieve Contractor of any and all obligations for that claim. ~~Any additional claim made after the initial claim is submitted to Contractor and which is based on or arises out of the same event as the initial claim will not be considered and is deemed waived.~~

24.1.3.   Contractor shall issue a final determination of any such claim submitted by Subcontractor within Thirty (30) days of the date on which Subcontractor submits all of the supporting documentation in support of its claim. Subcontractor must file a claim within Sixty (60) days of receipt of the final determination from Contractor or the file determination will be determinative of the claim and Subcontractor will have waived any right to pursue the claim through the dispute resolution process set forth in this Section. ~~And, if Subcontractor attempts to pursue a claim through the arbitration process, the arbitrator shall enter an arbitration incorporating by reference the final determination of Contractor.~~"

30.   Section 24.2. of the Subcontract Agreement provides as follows:

"***Dispute Resolution of Claims between Contractor and Subcontractor.***

24.2.1.   ***Meeting Prior to Arbitration.*** If a dispute arises concerning the construction or interpretation of this Agreement, the meaning of this Agreement, a breach of this Agreement, enforcement of a lien filed by Subcontractor, or any other matter touching on or affecting this Agreement, the Parties shall ~~meet at Contractor's principal place of business or~~ conduct a conference by telephone concerning the disputed issues in an attempt to resolve the dispute. If, after reasonable notice or a written request to participate in such meeting or telephone conference, the Subcontractor indicates its unwillingness to do this obligation shall be waived and Contractor may immediately commence arbitration.

24.2.2.   ~~***Arbitration by Henning Arbitration and Mediation Services.*** If the Parties are unable to resolve the dispute among them during the meeting or telephone conference as described in Section 24.2.1, the dispute shall be submitted to binding arbitration by the Henning Mediation and Arbitration Service, Inc. ("Henning") located in Atlanta, Georgia, under that organization's then current arbitration rules applicable to construction disputes. If Henning does not have construction~~

South LA Contractors, LLC, Claimant and Counter-Respondent, v.
FMGI, Inc., Respondent and Counter-Claimant,
AAA Case Number 01-21-0018-1725
Joint Statement of Uncontested Facts
Dated: September 19, 2024
Page 10 of 26

rules specific to construction disputes, the matter shall be resolved under its general arbitration rules. That arbitration will be held at Contractor's offices in Woodstock, Georgia. (See Page 1 of this document for the address of those offices. Neutral arbitrator in local of project site.

[DELETED SECTIONS OMITTED]

24.2.8.    *Settlement Negotiations.* Settlement discussions or negotiations shall be admissible as evidence to the extent they are admissible under the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

24.2.9.    *Losing Party Pays.* The party who fails to prevail at the arbitration (" non-prevailing party") shall bear the entire cost of the arbitration, including payment of the arbitrator's fees, and any administrative fees by Henning. The non-prevailing party shall also reimburse the prevailing party for actual costs, and reasonable attorneys' fees incurred by it from the beginning of the dispute through any appeal of the arbitration award. If it is not apparent from the outcome of the arbitration which party is the prevailing party, the arbitrator shall make a finding as to which party is the prevailing party. The arbitrator may be determine that neither party was the prevailing party in which case each party shall bear its own attorneys' fees and costs.

24.2.10.   *Interest on Arbitration Award.* Any monetary arbitration award shall bear interest at the Prime Interest Rate as published in the Wall Street Journal until the award is paid."

31.    Section 35 of the Subcontract Agreement as follows:

"**Extra Work and Change Orders.**

35.1.    *Timing of Proposed Change Orders.* Subcontractor shall submit a request for a change order to Contractor when it is apparent that Contractor has requested additional work beyond Subcontractor's scope of work. The written request for change order must be submitted by Subcontractor to Contractor within five (5) days of commencing the additional work. If Subcontractor fails to submit the written request for a change order within the time specified in this Section 32.1 Subcontractor waives any and all rights to claim additional compensation for that additional work. The proposed Change Order must be approved, in writing, by Contractor."

35.2.    *No Right to Payment without Authorized Change Order.* Subcontractor understands and agrees that additional work completed by it without a written Change Order approved and

South LA Contractors, LLC, Claimant and Counter-Respondent, v.
FMGI, Inc., Respondent and Counter-Claimant,
AAA Case Number 01-21-0018-1725
Joint Statement of Uncontested Facts
Dated:  September 19, 2024
Page 11 of 26

> signed by Contractor will not entitle Subcontractor to collect from Contractor under any legal theory, including, but not limited to, a legal theory based in contract, a legal theory based in tort, a legal theory based on a Federal, State or Local ordinance, rule, regulation or statute or the legal theories of quantum meruit and/or unjust enrichment.

> 35.3.  *No Right to Lien for Additional Work Completed Without Authorized Change Order.* Subcontractor understands and agrees it has no right to lien the Project for any additional work completed by it without a written change order approved and signed by Contractor.

> 35.4.  *Subcontractor's Responsibility for Assuring that Authorized Representative of Contractor Has Signed Change Order.* It is Subcontractor's responsibility to confirm the person signing on behalf of Owner has the authority to do so. Contractor's Job Superintendent and Assistant Job Superintendent have no authority to approve proposed change orders.

> 35.5.  *Delivery of Proposed Change Order.* Subcontractor may submit an electronic copy of the proposed change order so long as a hard copy is also sent. The proposed change order must be submitted by Subcontractor to the Project Manager assigned by Contractor to the Project."

32.    Next to Section 35.2 of the Subcontract Agreement, South LA Contractors placed the following notation "We've already started change order work under your direction without an authorized change order."  This statement is X'ed out.

33.    Section 36.1 of the Subcontract Agreement provides as follows:

> "Any notices required or permitted to be made in writing under this Agreement must be sent via email and a delivery method that requires a signature to effectuate delivery to the email addresses and physical addresses set forth below:

> If to Contractor:

> | | |
> |---|---|
> | Email Address: | darin.ross@fmgi-inc.com |
> | Physical Address: | FMGI, Inc. |
> | | 130 Arnold Mill Park, Suite 100 |
> | | Woodstock, GA  30188 |

> With a Photocopy to:
> | | |
> |---|---|
> | Email Address: | lpostic@mindspring.com |

South LA Contractors, LLC, Claimant and Counter-Respondent, v.
FMGI, Inc., Respondent and Counter-Claimant,
AAA Case Number 01-21-0018-1725
Joint Statement of Uncontested Facts
Dated: September 19, 2024
Page 12 of 26

Physical Address:   Lionel J. Postic, P.C.
4430 Wade Green Road, Suite 180-105
Kennesaw, GA 30144"

34.   Section 44 of the Subcontract Agreement reads:

THIS AGREEMENT CONSTITUTES THE ENTIRE UNDERSTANDING AND AGREEMENT OF SUBCONTRACTOR AND CONTRACTOR WITH RESPECT TO THE SUBJECT MATTER CONTAINED IN THIS AGREEMENT. ANY AND ALL PRIOR AGREEMENTS, UNDERSTANDINGS, OR REPRESENTATIONS, WHETHER ORAL OR WRITTEN, BY OR AMONG SUBCONTRACTOR AND CONTRACTOR OR THEIR AGENTS, DIRECTORS, EMPLOYEES, OFFICERS, OR SERVANTS ARE ENTIRELY SUPERSEDED, TERMINATED, CANCELED, AND HAVE NO FURTHER FORCE OR EFFECT. ANY MODIFICATION OF, OR SUPPLEMENT TO, THIS AGREEMENT MUST BE IN WRITING AND SIGNED BY BOTH CONTRACTOR AND SUBCONTRACTOR. IT IS THE RESPONSIBILITY OF SUBCONTRACTOR TO ASSURE THAT THE PERSON SIGNING ON BEHALF OF CONTRACTOR HAS AUTHORITY TO BIND THE CONTRACTOR.

35.   Page 27 of the Subcontract Agreement reads in part:

## Contract Exhibits

**The following exhibits are included as part of the attached contract:**

| Exhibit "A": |
| --- |
| • **Scope of Work** |
| • **Drawing List – (including any/all Addenda, if applicable)** |
| • **Specifications** |
| • **FMGI Owner Contract (Available Upon Request)** Need a copy |
| • **Pre-Bid Meeting Minutes (if applicable)** Need a copy |

36.   Section I of Exhibit A to the Subcontract Agreement provides that "Subcontractor shall furnish materials, labor, and equipment to complete the Site Work scope of work per plans and specs prepared by Linfield, Hunter, Junius, Inc."

37.   Section II of Exhibit A to the Subcontract Agreement provides in part:

"A. SITE WORK
1. ~~Provide MOT for your scope of work~~

Page 12 of 26

South LA Contractors, LLC, Claimant and Counter-Respondent, v.
FMGI, Inc., Respondent and Counter-Claimant,
AAA Case Number 01-21-0018-1725
Joint Statement of Uncontested Facts
Dated: September 19, 2024
Page 13 of 26

2. Supply and install all erosion control as specified
3. Demo areas as specified on plans and clear site for improvements
4. Undercut and import as necessary for building pad & site concrete
5. Furnish and install stone under building slab
6. Furnish and install Mirafi 600X as specified
7. Supply and install subgrade and base per plans
8. ~~Supply and install curbing per plans~~
9. ~~Supply and install ADA ramps & Tactile surfaces as specified~~
10. Final grade and dress
11. Provide ~~surveying and~~ as-built drawings for your scope redline as-builts only

\* \* \*

B. GENERAL REQUIREMENTS
1. ~~Complete all necessary tests and documentation required~~ will coordinate testing with Contractor
2. Coordinate with FMGI and any other subcontractors necessary to complete your scope.
3. Comply all FMGI and OSHA'S safety rules and regulations including wearing a safety harness while operating a scissor lift, all scissor lifts must have a spotter. Wear a hard hat and a safety-colored vest or company shirt at all times.
4. Per plans and specifications dated 05/07/2021 - 100% Construction Documents
5. Includes all Addendums"

**Unsuitables**

38.     On or before August 16, 2021, South LA Contractors, at the request of Contractor, mobilized on the Project site and began establishing erosion control and demolition/site clearing.

39.     On August 23, 2021, as South LA Contractors stripped the site it encountered soil that was unsuitable for use as a building subbase, as well as buried trash (wood, brick, metal, construction debris, etc.) ("**Unsuitables**"). South LA Contractors notified FMGI accordingly, and FMGI informed Floor and Décor and Professional Service Industries, Inc. d/b/a Intertek PSI ("**PSI**"), reporting that PSI was scheduled to be on site the following morning.

40.     The amount of Unsuitables to be removed was monitored by PSI.

41.     On August 24, 2021, Verzi sent an email stating,

"Please see attached photos of more unsuitable material discovered during

South LA Contractors, LLC, Claimant and Counter-Respondent, v.
FMGI, Inc., Respondent and Counter-Claimant,
AAA Case Number 01-21-0018-1725
Joint Statement of Uncontested Facts
Dated: September 19, 2024
Page 14 of 26

the undercut.

In order to quantify correctly, it has been suggested to keep an accurate count of outbound material, and then take measurements of the over excavation and track extra equipment time and labor.

Intertek should be here throughout the process.

Phillip,
Let me know what you need from me so you can proceed."

42.    On August 24, 2021 Melancon sent the following email:

Mike

We need some type of written authorization on this. Our unit costs for excavating then replacing soils usually run at $24/cy. To haul and dispose of trash being dug up over there will probably be $15/CY to haul and dispose of. This does not take in account if the material contains hydrocarbons or it is classified hazardous.

Please let me know something as soon as you can. BTW, we are proceeding with removal so we aren't holding anything up.

43.    On August 24, 2021 at 12:25 PM, Santiago sent Melancon an email to proceed with removal and replacement of the unsuitable soil. That email states:

"Please proceed with the removal of the unsuitable soils. Please makes (sic) sure to keep Tony [Verzi] up to speed on what is removed/replaced so we can go back to the owner."

44.    On August 27, 2021, the Project was suspended as a result of Hurricane Ida.

45.    On September 9, 2021, South LA Contractors resumed its work, excavating the site and demolishing concrete slabs, encountering Unsuitables along the way, as verified by PSI through proof roll and field density testing.

46.    On September 23, 2021, at 7:30 a.m. (CST), Verzi sent an email to Melancon which reads:

"Please see below email from August 24, 2021. This covers any unsuitables, trash or non-bearing material,
which will need to be hauled off site and replaced with select fill.
The Intertek PSI tech will document and keep track of quantities. If you need anything else

South LA Contractors, LLC, Claimant and Counter-Respondent, v.
FMGI, Inc., Respondent and Counter-Claimant,
AAA Case Number 01-21-0018-1725
Joint Statement of Uncontested Facts
Dated: September 19, 2024
Page 15 of 26

please let us know."

47.     On September 28, 2021, Melancon sent FMGI the following email:

Guys,

This is where we are as of yesterday on the unsuitables. Please forward official change order as soon as possible. Change Order #2 for the added construction entrances will follow shortly.

Thank You

Attached to the email is the following:

| 14 | UNITS (per attached emails) | | | | |
|----|------------------------------|------|--|--------|--------------|
| 15 | Import | 4553 | | $24.00 | $109,272.00 |
| 16 | Haul and Dispose | 4553 | | $15.00 | $68,295.00 |
| | | | | Total | $177,567.00 |

48.     On September 30, 2021, Santiago sent South LA Contractors an email stating:

"Can you please submit the backup for this CO (tickets for materials exported/imported)? This is required to get funded from Floor & Decor."

49.     PSI recorded a total of 11,038 cubic yards of unsuitable material removed from the project site by or on behalf of South LA Contractors.

50.     PSI recorded a total of 17,234 cubic yards of soil imported to the Project by or on behalf of SLC.

51.     On October 26, 2021, at 2:14 PM, Santiago sent the following email to Melancon:

I am trying to verify the information submitted, but it is a mess and I have spent way too much time trying to sort this out. What You need to do is send me a CO with your quantities. The backup should include the Invoice from Ivy Construction along with the tickets that match what's on their invoice. Based on the information I have received, there are many duplicates and errors in calculations on the invoices. You need to vet the information submitted to you before passing it along to me. Let me know if you have any questions.

South LA Contractors, LLC, Claimant and Counter-Respondent, v.
FMGI, Inc., Respondent and Counter-Claimant,
AAA Case Number 01-21-0018-1725
Joint Statement of Uncontested Facts
Dated:  September 19, 2024
Page 16 of 26

52.     On October 26, 2021, at 4:05 PM, SLC issued the following email:

> I understand the issue. I have added these tickets up my self twice for a total haul in of 23,276 yards of imported fill. 8788 of that import is in our original bid scope. Leaving 14488 if total imported fill that was out of our original scope of work. We have spoke about this several times trying to accommodate your schedule and timeline. We have delivered and all we are asking is to be paid for this service. With that being said what is the status of pay app 2 with the original scope of work. Is that being processed today?

53.     On November 19, 2021, Melancon sent an email to Santiago, McGee and Verzi stating:

> Guys,
>
> The haul off of unsuitable has been completed. I spoke to Jemery with the lab. His count of total haul off is 11038yards hauled off. We have calculated the yardage of undercutting based on the daily dimensions of the area we were cutting daily brings the math to 10,924.98 yards we agree with the lab's count of exporting. He will be submitting this report (Monday). Now with the 11038 yards of export and the compaction factor of (1.5) brings the math to 16,557 yards. Brandon Iveys is showing around the 21K yards of import (See previous emails) We've submitted his invoices and truck tickets to you already. Our original scope for import was 8788 yards. Please review this information so we can discuss the change order that will be submitted shortly after this email.

54.     On November 30, 2021, Melancon emailed stating "Please see this conversation on the values presented for import and export".

55.     On November 30, 2021, Santiago emailed Melancon stating:

> I don't see where there are any values discussed in this correspondence. What we do have is unit price of $24/CY to remove and replace unsuitable soils. This from your proposal dated 06/30/2021 and LOI dated 08/04/2021.
>
> *UNIT PRICES*
> Removal and Replacement Unsuitable Soils - $24.00/CY

56.     On November 30, 2021, Malancon issued an email stating: "the attachment line 15&16 import was $24.00 and haul and dispose of actually was listed as $15.00".

57.     On November 30, 2021, Santiago emailed Melancon stating as follows:

South LA Contractors, LLC, Claimant and Counter-Respondent, v.
FMGI, Inc., Respondent and Counter-Claimant,
AAA Case Number 01-21-0018-1725
Joint Statement of Uncontested Facts
Dated: September 19, 2024
Page 17 of 26

"The contract clearly states that to remove and replace unsuitable soils is $24/YC (sic). The attached CO you sent me was not approved nor is it part of our contract agreement. I don't see how this applies or overrides our contract?"

58.    On November 30, 2021, Melancon emailed Santiago stating:

And this is why I didn't want to move forward with the change order not in a formal change order and yes u are correct 24 a cubic yard for removal and replace now listen to what I are saying (sic) removal and replace not haul off so there u answer ur own question and that's where that 15 not 14 comes into place as of today (sic) this issue needs to be resolved and all parties need to be involved cause I'm not playing with the any longer (sic) this is a large amount and quite frankly just like be if there where issues with the amounts why wasn't it brought to our attention when we sent u the change order with amounts on it? South la will not be waiting on this matter to get resolved any longer his has been a issue that y'all insured us we would get paid and now that work is done y'all want to back out and that what we figured if we don't have this matter resolved be the end of today south la as well with all parties will proceed to move forward?

59.    Note 10 to Project Drawing C-1 states as follows:

UPON COMPLETION OF SITE DEMOLITION, THE UPPER 6 INCHES OF ORGANICS AND DELETERIOUS MATERIAL INCLUDING DEBRIS SHOULD BE STRIPPED FROM THE ENTIRE SITE TO EXPOSE CLEAN SUBGRADE.

60.    Note 11 to Project Drawing C-1 states in part as follows:

BELOW THE PROPOSED BUILDING SLAB AND EXTENDING 5 FEET BEYOND THE SLAB PERIMETER, 3 FEET OF OVER EXCAVATION BELOW THE EXISTING GRADE SHOULD BE PERFORMED. . . . SUBGRADE SHALL BE PROOF ROLLED WITH A RUBBER TIRED 20 TON LOADED CONSTRUCTION VEHICLE. RUTTING OR EXCESSIVELY DEFLECTING SOILS SHALL BE REMOVED AND REPLACED WITH COMPACTED SELECT FILL. ONCE 9 INCHES OF SUBGRADE HAS BEEN TREATED AND REVIEWED BY GEOTECHNICAL ENGINEER, THE AREA SHOULD BE FILLED WITH RECONDITIONED SOIL AND SELECT FILL. RECONDITIONED FILL SHALL BE ONSITE OVER-EXCAVATED MATERIALS OR IMPORTED MATERIAL . . .

61.    Note 12 to Project Drawing C-1 states as follows:

South LA Contractors, LLC, Claimant and Counter-Respondent, v.
FMGI, Inc., Respondent and Counter-Claimant,
AAA Case Number 01-21-0018-1725
Joint Statement of Uncontested Facts
Dated: September 19, 2024
Page 18 of 26

UNDER THE PAVEMENT AREA, THE EXPOSED SUBGRADE SHOULD BE PROOF ROLLED WITH A RUBBER TIRED 20 TON CONSTRUCTION VEHICLE. AREAS THAT PUMP OR RUT SHOULD BE EXCAVATED TO FIRMER MATERIALS AND REPLACED WITH COMPACTED GENERAL OR SELECT FILL AS DIRECTED BY THE GEOTECHNICAL ENGINEER.

## Payment Applications and Change Orders

62. In September 2021, South LA Contractors submitted revised Pay Application 1 to Contractor for alleged completed work totaling $285,233.00. Subtracting 5% retainage, South LA Contractors was paid $270,971.35.

63. In October 2021, South LA Contractors submitted Pay Application 2. Included in the submission was: (1) Change Order 1, which pertained to Unsuitables; (2) Change Order 2, which pertained to additional aggregate; and (3) Change Order 3, which pertained to an additional construction entrance. Melancon was told by Santiago to revise the Pay Application to remove Change Order 1.

64. After revisions, Pay Application 2 was approved with Change Order 2 and 3 being paid.

65. On November 2, 2021, South LA Contractors submitted revised Pay Application 3 to FMGI, with a new total of $205,200.00.

66. South LA Contractors' revised Payment Application 3 lists retainage at 5%.

67. South LA Contractors' revised Payment Application 3 contains the following percentages of completion:

| Task | Percentage of Completion |
|---|---|
| Mobilization/Demobilization | 50% |
| Erosion Control | 100% |
| Demolition | 100% |
| Site Work | 86.51% |
| Drainage | 51.06% |
| Change Order #2 - Add Stone | 100% |
| Change Order #3 - Construction Entrances | 100% |

68. On November 23, 2021, Melancon sent to Santiago an email requesting the status on revised Pay Application No. 3. Santiago stated that, "Your pay app 3 was submitted for processing".

69. On December 20, 2021, South LA Contractors and FMGI participated in a conference call concerning the SLA Unsuitables Change Order, revised Pay Application 3, and South LA

South LA Contractors, LLC, Claimant and Counter-Respondent, v.
FMGI, Inc., Respondent and Counter-Claimant,
AAA Case Number 01-21-0018-1725
Joint Statement of Uncontested Facts
Dated: September 19, 2024
Page 19 of 26

Contractors' progress at the Project.

70.    FMGI agreed during the conference call to release One Hundred Thousand Dollars ($100,000.00) to South LA Contractors in partial payment of revised Pay Application 3.

**Communications to South LA Contractors**
**Regarding Deficiencies and Seventy-Two Hour Notices**

71.    On or about November 5, 2021, FMGI issued a document addressed to South LA Contractors which reads in part as follows:

> Let this serve as Official Notice that you are behind schedule to complete your Contracted Scope of Work and therefore must immediately man this project with sufficient labor, materials, and equipment, to bring your work up to required performance with **72 hours.** This includes but is not limited to:
>
> *Failure to perform the Contracted Scope of Work in a professional and timely manner per the Architect's Plans, Failure to meet contract schedule, Failure to provide sufficient Labor and Materials to perform contracted work in Accordance with Local and State Codes, Failure to Provide Adequate Supervision to correctly construct your scope of work, and Failure to Communicate Delivery and Install Dates to complete your scope of work within the Contract Timeframe.*
>
> If within **72 hours**, you have not adequately addressed all the items above, FMGI will supplement your forces, obtain proper materials, and construct your scope of work, Any costs to do this will be deducted from your contract amount. Additionally, FMGI will look to legal means to recover any funds requested that are over your Contract Amount.
>
> Please contact this office immediately to inform us of your intentions concerning this matter.
>
> Your prompt attention to this situation is critical.

72.    On or about December 6, 2021, FMGI sent a letter to South LA Contractors that states in part:

> Good Afternoon Brad,
> We are issuing you another 72 Hour Notice per the contract based on the following:
> •    Silt fence needs maintenance
> •    Storm structures/pipes not on site

South LA Contractors, LLC, Claimant and Counter-Respondent, v.
FMGI, Inc., Respondent and Counter-Claimant,
AAA Case Number 01-21-0018-1725
Joint Statement of Uncontested Facts
Dated: September 19, 2024
Page 20 of 26

- Storm system installation is severely behind schedule
- Crushed concrete has not been removed from the site
- Concrete has not been fully demolished
- Final site grading has not been completed

A formal response is need[ed] within the next 72 Hours on how these issues will be solved along with an accelerated schedule of completion. Feel free to call me should you have any questions.

**December 2021 Communications and Removal of South LA Contractors From Project**

73. On December 2, 2021, during the weekly Subcontractor Meeting # 13, FMGI informed South LA Contractors that the "balance of the base and grading need to begin 12/20 and completed by 12/29".

74. On December 22, 2021, at 10:11 a.m. (EST) Santiago sent Melancon an email in which FMGI stated, in pertinent part, as follows:

> Please let this email serve as notice that starting Monday, December 27th, we will be supplementing your forces in an effort to get the building paid completed prior to January 3rd, 2022. Any costs incurred due to supplementing your forces will be back-charged to South LA Contractors, LLC. It would be in South LA Contractors best interest to complete this task prior to December 27th or assist in the completion [of] this task to minimize the back-charges. Please advise.

75. Melancon, in an email dated 12/22/21 9:47 AM (CST) responded as follows:

> Ok guys u want rock in the building I want the testing lab on site today I'm on my way there now and I want him to tell me to move forward

76. Melancon sent an email dated 12/22/21 10:10 AM stating:

> This is per FMGI meeting minutes which is #13 and this was without the rain delays that we have inquired that is not noted in the emails? I've sent a screenshot of it if no one remembers.

77. Melancon issued an email dated 12/22/21 attaching photos of the site condition. The email stated:

> And this is ur building pad as of today and that is ur superintendent that is creating u a bigger problem are ur subs but not south la it was FMGI who wanted it installed that way I new this was gonna happen? Send testing lab and I will start putting rock?

South LA Contractors, LLC, Claimant and Counter-Respondent, v.
FMGI, Inc., Respondent and Counter-Claimant,
AAA Case Number 01-21-0018-1725
Joint Statement of Uncontested Facts
Dated: September 19, 2024
Page 21 of 26

78.   Melancon issued in an email to FMGI dated 12/22/21 stating:

> So we received a notice to supplement our work at 9 o'clock this morning it's almost 1 o'clock south 1 has been responsive to the notice and is onsite to address any issues but yet we can't get a return phone call are email? But this has been FMGI style since we started the job no communication?

79.   On December 22, 2021, Darin Ross sent the following email to Melancon:

> Brad, please take the time to read all of the email below and thoroughly think through your next action. I do not need a response, only for you to comply with what we are asking of you. This [is] the final determination of these issues from FMGI.
>
> I said that the check was cutting today and it is…but your obligation per the conference call was to deliver the storm piping for the job and have people onsite working. Doesn't appear that either has happened. There is no way this pipe is even for this project, let alone I'm not sure how you are going to get these structures approved. You changed suppliers in mid-stream and didn't inform FMGI until we approached your supplier that had submitted shop drawings and they informed us the order was cancelled. You contend for expediting reason, they claim nonpayment on other projects. Regardless it's your responsibility to notify FMGI of any changes.
>
> You have had 1 person working. You have repeatedly been advised in coherent emails and discussions (including walking with Tony today as represented in the attached email) what you need to get accomplished and it seems to fall on deaf ears or you somehow blame FMGI for your shortcomings. I would be hard pressed to get anyone to agree that you have completed 30% of your contract let alone approximately 65% of your contract, as nothing is complete.
>
> We seem to be approaching approval of the unsuitable change order with Floor & Décor and once approved, we will issue you an additive change order and anticipate making joint check payments to the suppliers and sub subcontractors that have reached out to us for nonpayment. If any of these claims are not accurate it is your duty to get them resolved and adjusted to an agreed amount and provide to FMGI a release of lien.
>
> Please be advised that unless there is significant progress made in the next week, you will continue to be supplemented or replaced altogether. Any costs associated with replacing your and/or supplementing you will be applied against your contract amounts and you will be responsible for any

South LA Contractors, LLC, Claimant and Counter-Respondent, v.
FMGI, Inc., Respondent and Counter-Claimant,
AAA Case Number 01-21-0018-1725
Joint Statement of Uncontested Facts
Dated: September 19, 2024
Page 22 of 26

overages if they occur and be rest assured, FMGI will pursue any amounts you may owe. You are also instructed to not remove any material from the site unless directed by FMGI to do so.

I would hope that you take this opportunity to make any corrections and use your efforts to get this project completed in an amicable way.

80.     On December 22, 2021, Melancon sent the following email to Darin Ross:

Darin the only thing I will say to us is u are the kinda guy who make people not trust General Contractors ur a snake and a man that ur word is shit but I u hope u can sleep at night? Jason I'm done sending emails with this group of people, it's ur dance floor!

81.     On December 22, 2021, Darin Ross sent the following email to Melancon: "So by the nature of this email are you officially abandoning the project?"

82.     On December 22, 2021, Melancon sent the following email to Darin Ross:

Sorry bud me calling u a snake doesn't mean we are leaving the job so u can win at the game ur playing my guys will be there again tomorrow working and doing what we said we would do but I can assure u the game ur playing at the end of the day us will loose. So with that being said have a good day.

83.     On December 22, 2021, Darin Ross sent the following email to Melancon: "Brad, we want nothing more than for you to do a great job and finish this project without further animus."

84.     On December 23, 2021, Melancon sent the following email to FMGI:

Good morning
Guys I went to the site yesterday came up with a plan to get ur building pad finished today my guys are onsite to execute the plan we made yesterday and now everything has changed and we can't get in the building, I sent Tony a text and no response? I have 6 guys onsite and we are just waiting. Can we please get a answer?

This is my text to Tony

Why now u telling my guys we can't go through the only entrance to the building when we discussed this yesterday I have a whole dam crew to Address this issue and u delay us again move the brick layers

85.     On December 23, 2021, Verzi responded to Melancon with the following email:

South LA Contractors, LLC, Claimant and Counter-Respondent, v.
FMGI, Inc., Respondent and Counter-Claimant,
AAA Case Number 01-21-0018-1725
Joint Statement of Uncontested Facts
Dated: September 19, 2024
Page 23 of 26

You knew the block wall was being worked in yesterday. When they finish the wall today and take the scaffold down you can get trucks in . I gave your guys a plan first thing this morning to go in and out the other entrance with skid steers

86. On December 23, 2021, Melancon replied to Verzi stating:

Skid steers Tony we will be there a dam month and u told me we could go through right there why do U try to back step every time I'm not keeping a whole crew out there for that ur holding us up due to ur planning we discussed this yesterday

87. On December 23, 2021, Melancon further replied to Verzi stating:

Tony how do I know the entrance is 12 ft cause Tony said we could pass there u should have know problem entrance is 12 ft wide how in the hell im supposed to get this pad done by Monday when. It's Christmas holidays and ur holding us up I think it would be a bigger priority to get concrete down than a block wall but again south la will get the dam blame cause the superintendent on the site doesn't know what he is doing? And can't stand behind the decision he makes for the record south la is onsite with 6 guys dump trucks and can't work and Tony I have a witness to back up that u told us we could go through there.

88. On December 23, 2021, Santiago replied to Melancon's emails stating:

You need to stop with this nonsense. If you were on site yesterday you would have seen that the masons were working in this area. Not to mention that the masons are doing their job per the schedule and per the meeting minutes which you received. The fact remains that this should have been done a long time ago. Now you want to bring dump trucks in the building which will cause more damage to an already bad situation? We are not holding you up and we are not going to delay other trades so you can catch up. The pad will get done one way or the other.

89. On December 23, 2021, Melancon replied to Santiago's emails stating:

Y'all created this problem mike Santiago it's all good cause I can't wait till Monday are Tuesday cause I will meet y'all on-site to discuss these issues.

90. On December 28, 2021, Melancon sent FMGI the following email:

FMGI is blocking south la from entering the building to attempt to complete the work that was started south la has requested the testing lab to be onsite

South LA Contractors, LLC, Claimant and Counter-Respondent, v.
FMGI, Inc., Respondent and Counter-Claimant,
AAA Case Number 01-21-0018-1725
Joint Statement of Uncontested Facts
Dated: September 19, 2024
Page 24 of 26

to Witness the site conditions and was denied south la was informed that the testing lab is to come out today to take compaction test but FMGI would not have them come out last week to see the building pad conditions this morning south la was instructed by site superintendent to get off the job and has stop us from movement forward with our task. At this time it is advised that no one touch the rock that is not for fmgi any rock that is missing will be back charge as well with all the dirt south la removed from the build that was cause from fmgi. And just to add FMGI was aware of a problem in the building due to weather conditions cause it was asked to the testing lab to cut lime just might I add?

91.    On December 28, 2021, Melancon sent an additional email to FMGI attaching photos of the site, stating, "And this is what y'all wanted me to put rock on"

92.    On December 28, 2021, Verzi responded to Melancon, stating,

No, as discussed you were directed to remove the wet dirt and slop first.
Also, per the city of baton rouge , the streets need to be cleaned.

93.    On December 28, 2021, Melancon responded to Verzi, stating,

Really Tony I have to clean the streets when I'm not even tracking them up and I did remove the dam mud buddy I hope ur company wants to spend a lot of money to cover ur back cause I'm onsite and been onsite and all u do is lie do u think we do t take pics to cover us bud. Ur removing the rock that was installed not just the mud do I want me to send u pics I will be glade to provide u with that?

94.    On December 28, 2021, Melancon further responded to Verzi, stating,

FMGI has contaminated the whole building pad all the rock that was installed by south la is now bad material Per the specs this is all supposed to be witnessed my the testing lab which hasn't.

95.    On December 28, 2021, Melancon further responded to Verzi, stating,

As of 2:30 testing was onsite and it was said the pad was to wet to put stone but FMGI is still haul material in the building Tony once again asked me to leave. So am I finishing my scope are not? can't figure out which way to turn was also told to wasn't laying pipe as well guys are out stringing pipe are it is just FMGI plan to get all structures onsite and try to supplement the work on what grounds?

96.    On December 28, 2021, Verzi responded to Melancon, stating,

South LA Contractors, LLC, Claimant and Counter-Respondent, v.
FMGI, Inc., Respondent and Counter-Claimant,
AAA Case Number 01-21-0018-1725
Joint Statement of Uncontested Facts
Dated: September 19, 2024
Page 25 of 26

> Test lab said no such thing ! You cannot Fabricate the truth and think it will be believable. I told you you are not laying pipe without structures here . You had structures built by your approval only and now they have to be rebuilt . You have only submitted the corrected drawings last Thursday and are still missing 3 structures in those drawings .

97. On December 28, 2021, Melancon responded to Verzi, attaching photos and a movie of the site, stating,

> Tony ur a lier the testing lab well told u that and u know it u have been the problem since day one cause ur trying to cover up ur screw up just like the rock and if the testing lab told u to proceed with rock today provide me with the test results bet u can't? U just had the plumber in there on Thursday and they where put on notice Tony? So since ur tell me I can't lay pipe until what structures are there? Cause of two structures u don't know a thing about construction all the footings around the building need to be dug out and packed back in cause they where all put in wrong and I will provide pics for u on that to cause im sure that wasn't tested pic below will confirm that!

98. On December 29, 2021, McGee emailed Melancon, stating,

> Brad, you are to cease all work and leave site until next Monday Jan. 3. Between now and then I will provide to you with an updated list and schedule of the work that we will mutually agree to do in writing.
>
> This will allow everyone to cool down and hopefully make better decisions going forward.
>
> I appreciate your help with this.

99. On December 30, 2021, McGee sent the following email to South LA Contractors:

> Pursuant to the 72-hour notice sent to you from Mike Santiago dated December 14, 2021, you have still not satisfactorily completed sufficient work for us to allow you to remain on this project. You are to cease any work and contact Mike Santiago to set up an appointment to pick up/remove your equipment. You are not to remove any materials, either in-place or stored, from site. If you try to do so we will contact the local authorities and prosecute, as necessary.
>
> We will supplement the work in your contract including repair and/or replace any deficient work and will back charge any/all costs for same against your contract.

South LA Contractors, LLC, Claimant and Counter-Respondent, v.
FMGI, Inc., Respondent and Counter-Claimant,
AAA Case Number 01-21-0018-1725
Joint Statement of Uncontested Facts
Dated: September 19, 2024
Page 26 of 26

As previously requested, please provide us with Statement of Accounts from all of your vendors, etc. that have supplied or furnished materials for this project.

**Claims of South LA Contractors' Subtiers**
**The Parties Agree the Below Documents Will Be Introduced and Are the Best Evidence of the Information Contained Therein**

100. On or about November 12, 2021, Driveshaft Construction, LLC (**"Driveshaft"**) recorded a lien against the Project in the amount of $79,959 that Driveshaft asserted was due from South LA Contractors for services that Driveshaft performed for South LA Contractors on the Project.

101. On or about January 21, 2022, Ivey Construction, LLC (**"Ivey"**) recorded a lien against the Project in the amount of $101,913.75 that Ivey asserts is due from South LA Contractors for dirt and fill material that Ivey supplied to South LA Contractors on the Project.

102. On or about March 4, 2022, Coburn Supply Company, Inc. (**"Coburn"**) recorded a lien against the Project in the amount of $32,917.37 that Coburn asserted was due from South LA Contractors for supplies and materials that Coburn supplied to South LA Contractors on the Project.

103. FMGI posted release of lien bonds to secure the release of the liens recorded by Driveshaft, Ivey, and Coburn.

104. On or about June 1, 2022, Ivey filed suit against South LA Contractors, Melancon, FMGI, and Floor and Décor in the matter captioned *Ivey Construction, LLC. v. Floor & Décor Outlets of Am., Inc., et al.*, No. C-71964424, 19th JDC, East Baton Rouge Parish, State of Louisiana (**"Ivey Lawsuit"**), in which Ivey seeks to recover for unpaid dirt and fill material that Ivey allegedly provided to South LA Contractors for the Project.

105. On or about October 14, 2022, Driveshaft filed suit against FMGI, Great Midwest Insurance Company, and South LA Contractors in the matter captioned *Driveshaft Construction, LLC v. FMGI, Inc., et al.*, No. C-724696, 19th JDC, East Baton Rouge Parish, State of Louisiana (**"Driveshaft Lawsuit"**), in which Driveshaft seeks to recover for unpaid services for transportation/hauling of dirt and fill material that Driveshaft allegedly provided to South LA Contractors for the Project.

DocuSign Envelope ID: C90BE966-83D6-4239-A3C7-B0641B548D5C

# FMGI BUILDING EXCELLENCE

| | |
|---|---|
| **EFFECTIVE DATE OF AGREEMENT:** | 8/26/2021 |
| **CONTRACTOR NAME AND ADDRESS ("Contractor"):** | FMGI, Inc.<br>130 Arnold Mill Park, Suite 100<br>Woodstock, GA 30188<br>(678) 903-2200 |
| **SUBCONTRACTOR NAME AND ADDRESS ("Subcontractor"):** | SOUTH LA CONTRACTORS, LLC<br>404 Kilchrist Road<br>Carencro, LA 70520<br>Attn: ~~Phillip Taylor~~ Brad Melancon<br>Email: ~~taylor_southla@yahoo.com~~<br>(337) 345-1429    southlacontractorsllc@yahoo.com |
| **OWNER NAME AND ADDRESS ("Owner"):** | Floor & Decor Construction<br>2233 Lake Park Drive<br>Ste 400<br>Smyrna, GA 30080 |
| **ARCHITECT NAME ("Architect"):** | Linfield, Hunter, Junius, Inc. |
| **PROJECT NAME AND ADDRESS ("Project"):** | Floor & Decor Baton Rouge G/U<br>9969 Professional Blvd<br>Baton Rouge, LA 70809 |
| **SUBCONTRACT AGREEMENT NUMBER:** | 2138-02 |
| **CONTRACT AMOUNT:** | $751,033.50 SEVEN HUNDRED FIFTY ONE THOUSAND THIRTY THREE DOLLARS AND 50 CENTS |
| **RETAINAGE PERCENTAGE:** | 10% |
| **START DATE:** | 8/9/2021 |
| **COMPLETION DATE:** | 3/14/2022 |
| **SUBMITTALS MUST BE SUBMITTED (Section 5 of this Agreement):** | Within 5 days of the Effective Date of this Subcontract Agreement |
| **PAYMENT/ PERFORMANCE BONDS REQUIRED?** | ____ Yes.    X No.<br>(If required, see Section 11.1 of this Agreement) |

This Agreement is made as of the 8/26/2021 (Effective Date) by and between SOUTH LA CONTRACTORS, LLC (Subcontractor) and FMGI, Inc. (Contractor).

Subcontractor agrees to furnish and pay for all materials, labor, scaffolding, equipment, tools, appliances, and everything necessary for the complete execution of Site Work (Scope of Work) for the Project for Owner in accordance with Contract Documents all of which are made a part of this Subcontract Agreement. We need our clarifications / exclusions included in contrac

1.    **Definitions.** The following terms, when capitalized, shall have the meanings set forth in this Section 1:

Subcontractor Initials: _____    FMGI Initials: _____



DocuSign Envelope ID: C96BE966-43D0-423B-A3C7-60641B646D6C

FMGI Subcontract Agreement
Subcontractor Initials: _____    FMGI Initials: _____
Project: Floor & Decor Baton Rouge G/U
Page 2 of 40

1.1    "*Agreement*" means this document, any attachments to it, and any properly executed amendments, modifications, or supplements to it.

1.2    "*Architect*" is set forth on Page 1.

1.3    "*Claim*" means any type or manner of claim, cost, expense, or liability (including reasonable attorneys' fees), attributable to bodily injury, personal injury, sickness, disease, or death, or to damage to or destruction of property (including loss of use of such property), caused in whole or in part by any act or omission of Subcontractor or any person acting on behalf of Subcontractor, or arising out of, resulting from, or occurring in connection with the performance of any portion of the Scope of Work by Subcontractor, its subcontractors, or their agents or employees, or someone for whom Subcontractor is responsible whether or not caused in part by the active or passive negligence or other fault of Contractor, Owner, or other person or entity being indemnified against or held harmless from and against such Claim.

1.4    "*Contract Amount*" means the amount stated above.

1.5    "*Contract Documents*" means this Agreement, the Drawings and/or Specifications, any General Terms and Conditions applicable to the Project, submittal approvals, the Prime Contract, any addenda, attachments or exhibits to those documents, and any addendum to modification to any of those documents, including, but not limited to, change directives or change orders which are a copy of the prime contract. **Exhibit B of Prime**

1.6    "*Contractor*" or "*FMGI*" means FMGI, Inc., a Georgia corporation, whose address is 130 Arnold Mill Park, Suite 100, Woodstock, GA 30188.

1.7    "*Owner*" is set forth on Page 1 of this document.

1.8    "*Subcontractor*" is set forth on Page 1 of this document.

1.9    "*Materialman*" means any person or entity who furnished materials or supplies to Contractor, Subcontractor or any Sub-subcontractor of Subcontractor and which were used in the construction of the Project.

1.10   "*Project*" is set forth on Page 1 of this document.

1.11   "*Scope of Work*" means the work described on Exhibit A to this Agreement. (That Exhibit is incorporated by reference into this Agreement as though fully set forth here.).

1.12   "*Sub-subcontractor*" means any person or entity that has a contractual agreement (whether oral or in writing) with Subcontractor to: perform any portion of Subcontractor's Scope of Work under this Agreement; supply temporary employees to Subcontractor; or, perform any other services for Subcontractor at the Project. Subcontractor understands and agrees that it is responsible or liable for any and all acts or omissions of any of its Sub-subcontractors and anyone working for or under such Sub-subcontractors while at the Project site.

1.13   "*Prime Contract*" means the construction contract for the Project between Owner and Contractor. (A copy of this document is available to Subcontractor upon written request). **Exhibit B of Prime**

2.    Inspection of Premises.

2.1    Subcontractor has adequately investigated the nature and condition of the Project location, has familiarized itself with all conditions of the Project that may affect the work, has familiarized itself with the plans and specifications for the Project, and has entered into this Subcontract Agreement based on its own investigation and evaluation and not in reliance on any representation (oral or written) of Contractor or any other party concerning the Project location, its conditions, or the plans.

2.2    Notwithstanding the dimensions on the Plans, Specifications and other Contract Documents, it shall be the obligation and responsibility of Subcontractor to take such measurements as will ensure the proper matching and fitting of its Scope of Work covered by this Agreement with contiguous work.

2.3    Should the proper and accurate performance of the Scope of Work depend upon the proper and accurate performance of other work not covered by this Agreement, Subcontractor shall carefully examine such other work, determine whether it is in fit, ready and suitable condition for the proper and accurate performance of the Scope of Work, use all means necessary to discover any defects in such other work, and before proceeding with the work under this Agreement, report promptly any such improper conditions and defects to Contractor in writing and allow Contractor a reasonable time to have such improper conditions or defects remedied. Should Subcontractor fail to comply

DocuSign Envelope ID: C90BE066-53D6-4239-A3C7-B0541B545D5C

FMGI Subcontract Agreem
Subcontractor Initials: ~~[initials]~~      FMGI Initials: _____
Project: Floor & Decor Baton Rouge G/U
Page 3 of 40

No
BN

~~with the requirements of this Section, Subcontractor shall bear all costs incurred in correcting any improper conditions or defects by Contractor, Owner and other subcontractors, and shall not be entitled to extensions of time and adjustments in price because Subcontractor was delayed in its work because of the corrective work to the improper conditions or defects.~~

3.   **Disputes Concerning the Scope of Work.** ~~If there is a dispute as to whether any work is part of the Scope of Work, Subcontractor shall proceed with such work as if it were part of the Scope of Work on receipt of a written directive to do so from Contractor. Subcontractor shall make the claim, if any, for a price or time adjustment as if such work were changed work.~~ If Contractor and Subcontractor cannot reach an agreement with regard to the work in dispute, Subcontractor shall submit a claim, in writing, to Contractor, which shall issue a final decision on the claim. Should Subcontractor dispute that final decision, it shall follow the claim and dispute resolution procedures under Section 24 of this Agreement.

4.   **Commencement and Completion of Work by Subcontractor.**

4.1.   *Commencement of Work.* Subcontractor agrees to commence the work when directed by Contractor on the Start Date.

4.1.1.   Subcontractor agrees to commence the work when directed by Contractor, to diligently and continuously prosecute the work to coordinate its work being done on the Project by Contractor and other trades, so that Contractor and the other trades will not be delayed by any act or omission of Subcontractor in completion of their respective duties within the time specified in the Contract Documents.

4.1.2.   If for any reason Subcontractor is unable to commence the work on the agreed date, Subcontractor will immediately notify Contractor. Contractor and Subcontractor will establish a new time of commencement. ~~If there is no agreement as to when the new time of commencement is to begin, Contractor may terminate this Agreement, declare Subcontractor in breach, and hire a substitute subcontractor holding Subcontractor responsible for any and all monetary damages sustained by Contractor in retaining an alternate subcontractor to perform Subcontractor's Scope of Work.~~

4.2.   *Completion Date.* The "Completion Date" is the date set forth on Page 1 of this document unless an extension is agreed to in a written document signed by an authorized representative of the Contractor. The Project Superintendent is not authorized to amend or modify either the Commitment Date or the Completion Date. Subcontractor shall not be entitled to rely on any oral statement or assurance made by any employee of Contractor extending either the Start Date or the Completion Date as stated in this Agreement.

5.   **Subcontractor's Required Submittals.**

5.1.   Subcontractor will submit to Contractor within the following days as stated on Page 1 of this document concerning "Submittals".

5.1.1.   Complete shop drawings;
5.1.2.   Any data required by the Scope of Work;
5.1.3.   Catalogue cuts;
5.1.4.   Samples as required by the Plans or Specifications; or,
5.1.5.   Any other submittals required by Owner or Contractor.

5.2.   Subcontractor shall also submit to Contractor, within ten (10) calendar days after the execution of this Agreement by Contractor and before the first payment is due to Subcontractor under this Agreement, an accurate breakdown showing the estimated cost of each part of the Scope of Work, the total of which shall be used as a basis for preparing and checking periodic estimates for progress payments. Subcontractor shall update this estimate on the written request of Contractor.

6.   **Progress.**

6.1.   *Subcontractor to Follow Schedule.* Subcontractor shall follow the schedule established by Contractor and must coordinate all work activities with it and any contractors retained by Owner.

6.2.   *Overtime.*   We need a copy of the project schedule and any amendments thereafter.

6.2.1.   If the progress of the Work or of the Project is delayed by any fault or neglect or act or failure to act of Subcontractor or any of its officers, agents, servants, employees, subcontractors, suppliers, or persons or entities for which Subcontractor is responsible,

DocuSign Envelope ID: C90BE988-83D6-4239-A3C7-805419548D5C

FMGI Subcontract Agreement
Subcontractor Initials: ___
Project: Floor & Decor Baton Rouge G/U
Page 4 of 40

FMGI Initials: ___

Subcontractor shall, in addition to all of the other obligations imposed by this Agreement upon Subcontractor in such case, and at its own cost and expense, work such overtime as may be necessary to make up for all time lost in the completion of the Scope of Work and of the Project due to such delay.

6.2.2 Should Subcontractor fail to make up for the time lost by reason of such delay, Contractor shall have the right to cause other subcontractors and/or sub-subcontractors of the Project to work overtime and to take whatever other action it deems necessary to avoid delay in the completion of the Work and of the Project, ~~and the cost and expense of such overtime and/or such other action shall be borne by Subcontractor.~~

6.2.3 Contractor, if it deems necessary, may direct Subcontractor to work overtime and, if so directed, Subcontractor shall work said overtime and, provided that Subcontractor is not in default under any of the terms or provisions of this Agreement or of any of the other Contract Documents and the direction to work overtime was not due in whole or in part to any fault or failure of Subcontractor, ~~Contractor will pay the Subcontractor only for such actual additional wages paid, if any, at rates which have been approved by Contractor plus taxes imposed by law on such additional wages, plus workers' compensation insurance, liability insurance and levies on such additional wages if required to be paid by~~ Subcontractor to comply with Subcontractor's obligations under this Agreement.

6.2.4 ~~Subcontractor acknowledges that if it intends to pursue a claim of inefficiency, loss of productivity or other similar or related request for additional compensation, Subcontractor may rely only on evidence indicating the actual inefficiency, loss of productivity or other similar consequences as it occurred on the Project and agrees that no reports, analyses, data, industry or academic studies or any other evidence that do not exclusively rely on and pertain to the Work performed at the Project shall not be used or shall not in any way considered, in whole or in part, in connection with the resolution of such a claim, regardless of the forum where the claim is brought and the circumstances under which such claim is brought.~~

7. **Contract Documents.** Subcontractor agrees to be bound to Contractor by all of the terms and conditions of Prime Contract and any of the other Contract Documents, and to assume toward Contractor all of the obligations and responsibilities that Contractor has assumed toward Owner by or under those documents with respect to Subcontractor's Scope of Work or general duties and obligations of the Project. If any of the Contract Documents provide for greater duties and obligations on the part of Subcontractor toward the Owner than the duties for which this Agreement provides, Subcontractor shall also owe such greater duties and obligations to Contractor and Owner.

8 **Inspection/Uncovering of Work.**

8.1 *Inspection and Uncovering During Project.* Owner, Architect, and Contractor shall have access to the work wherever it is in progress. If any work of Subcontractor or any of its Sub-subcontractors must be inspected by Architect, Contractor, Owner, or by a public authority pursuant to any of the Contract Documents, as requested by Contractor or Owner, or as required by law and is covered, closed, or concealed before the inspection, that work must, if required by Architect, Owner, or Contractor, be uncovered for examination and covered again to contract specifications and/or governmental ordinances, rules, regulations, or statutes, whichever is appropriate. If uncovering of the work is required, the uncovering and repair of the work will be at Subcontractor's expense.

8.2 *Inspection and Uncovering After Completion of Scope of Work.* If any portion of the Subcontractor's work has been covered which Contractor has not specifically requested to observe prior to being covered ~~and there is no requirement under any law that it be uncovered so as to allow inspection by a governmental entity,~~ Contractor may request to see such work and it shall be uncovered by Subcontractor.

8.2.1 ~~If such work is found to be in accordance with the Contract Documents,~~ the cost of uncovering and replacement shall, by appropriate Change Order, be charged to Contractor.

8.2.2 ~~If such work is found to be not in accordance with the Contract Documents, the cost of uncovering, correction, and/or replacement shall be the responsibility of Subcontractor, unless it is found that the condition was caused by Contractor, Owner, or a separate contractor, in which event Contractor shall be responsible for the payment of such cost.~~

NO

BL

DocuSign Envelope ID: C90BE966-53D6-4239-A3C7-B05418648D6C

FMGI Subcontract Agreement
Subcontractor Initials: _____    FMGI Initials: _____
Project: Floor & Decor Baton Rouge G/U
Page 5 of 40

9.    **Suppliers and Materialmen.** Subcontractor shall furnish to Contractor the names, addresses, and telephone numbers of all Sub-subcontractors, vendors, suppliers, and materialmen that Subcontractor will use to perform work on the Project. If, after commencement of work on the Project, Subcontractor purchases materials from a supplier or materialman other than those specified on the list, or uses a Sub-subcontractor other those on the list, Subcontractor shall furnish the name, address, and telephone number of such supplier, materialman, or Sub-subcontractor to Contractor. If Subcontractor fails to provide Contractor with the names, address, and telephone numbers of its Sub-subcontractors, vendors, suppliers, and materialmen, Contractor has the right, but not the duty, to hold any amount due to Subcontractor on the Project until all rights to lien the Project have expired and it has been determined that no liens have been filed against the Project. If such determination requires a title search, Subcontractor shall be responsible for the cost of that title search.

10.   **Warranty.**

10.1.   Subcontractor warrants to Contractor and Owner that: all materials and equipment furnished under this Agreement will be of good quality and new, unless otherwise required or permitted by the Contract Documents; the work performed will be free from any defects or deficiencies in workmanship or materials; and the work will conform with the requirements of the Contract Documents. Work not conforming to these requirements, including substitutions not properly approved and authorized, shall be considered defective, and must be corrected by Subcontractor at no cost to Contractor. If required by Contractor or Owner, Subcontractor shall furnish satisfactory evidence as to the kind and quality of materials or equipment to be employed in the performance of the Scope of Work. All manufactured articles, materials, and equipment shall be stored, applied, installed, tested, connected, erected, used, cleaned, and conditioned by Subcontractor as directed by the manufacturer, unless otherwise specified in the Contract Documents.

10.2.   Before final payment is processed, Subcontractor must furnish Contractor and Owner with a complete warranty for materials and workmanship that has a duration of no less than one (1) year from the date of Substantial Completion of the Project or the date of Owner's Certificate of Occupancy, whichever is the later date, on warranty forms /documents approved by Contractor. It shall be Subcontractor's responsibility to present such warranty forms/documents for approval to Contractor. To the maximum extent possible, Subcontractor shall assign to Owner any and all warranties on equipment or materials installed or used on the Project by Subcontractor or any of its Sub-subcontractors. Contractor has no duty to issue payment to Subcontractor for its final payment and/ or retainage unless and until the warranty documents are received from Subcontractor by Contractor, including, but not limited to, properly executed assignments of such any manufacturer warranties. Subcontractor assumes all responsibility for warranty work and shall assure such warranty work is completed within fourteen (14) days of the request for repair or replacement of the defective materials or workmanship. If Subcontractor fails to assure the warranty work is completed within that fourteen (14) day time period, Contractor has the right and the power to hire others to complete the warranty work and charge Subcontractor for all costs incurred in completing the work. That Subcontractor could have completed the work at a lower rate than that paid by Contractor shall not be a defense to any attempt to collect the amount paid for correction of the work. Contractor may deduct the costs of hiring another person or entity to complete the warranty work from any amounts due or to become due to Subcontractor. Subcontractor shall, within (5) days of a request from the Contractor, provide to Contractor any warranty documents requested. If Subcontractor fails to provide the warranty documents within fourteen (14) days of the date on which the Certificate of Occupancy is issued, Subcontractor shall pay all expenses incurred by Contractor, including, but not limited to, reasonable attorneys' fees and/or the amount of time expended by employees of Contractor in obtaining the warranty documents multiplied by their hourly wages, plus labor burden, in obtaining the warranty documents.

10.3.   Subcontractor shall provide to Contractor a "Subcontractor's Statement of Warranty" at final completion of the Project or as requested, in writing, by Contractor. The "Subcontractor's Statement of Warranty" shall be on Subcontractor's letterhead, signed by an officer, notarized, and shall state as follows:

10.3.1.   The work performed by Subcontractor and any of its Sub-subcontractors complies with Section 10 of this Agreement; and,

10.3.2.   All work, materials, and equipment furnished under this Agreement shall be free from

DocuSign Envelope ID: C90BE968-83D6-4239-A3C7-80541B648D6C

FMGI Subcontract Agreement
Subcontractor Initials: _____    FMGI Initials: _____
Project: Floor & Decor Baton Rouge G/U
Page 6 of 40

failure under ordinary usage for a period of one (1) year from the date of the Subcontractor's Statement of Warranty.

10.4   Contractor shall have the right to provide a copy of the Subcontractor's Statement of Warranty to Owner, and Owner and Contractor shall be entitled to rely on that Statement of Warranty.

11.   **Insurance and Bond Requirements.**

~~11.1   Bonds.~~

Not Applicable

~~11.1.1.   If a Payment and Performance Bond is required for the Project, then such bonds shall be on the form approved by Contractor and with a surety acceptable to Contractor and Owner in the full amount of this Agreement for the faithful performance by Subcontractor of this Agreement. An acceptable copy of the bonds and the bond application shall be made part of this Agreement and properly attached as an Exhibit to this Agreement. It shall be the responsibility of the Subcontractor to submit the bond in a timely manner.~~

~~11.1.2   Subcontractor shall pay the bond premiums. If a Payment and Performance Bond is required under this Agreement, the failure to obtain That Bond is a material breach of this Agreement.~~

11.2   *Insurance.*

11.2.1.   *Insurance Coverage.* Subcontractor shall maintain at its cost such insurance coverage as will protect it, Contractor, and Owner from any and all claims associated with its activities whether directly related to this project or indirectly related to this project. The coverages and limits of liability contained in Subcontractor's insurance policies shall be no less than specified below:

10.2.1.1.   Commercial General Liability Insurance: combined single limit for bodily or personal injury and property damage of not less than One Million and 00/100 Dollars ($1,000,000.00) per occurrence, and Two Million and 00/100 Dollars ($2,000,000.00) annual aggregate. The Commercial General Liability Insurance shall include as minimum coverage: (a) Premises – Operations Liability; (b) Products and Completed Operations Liability; (c) Broad Form Property Damage Liability; (d) Blanket Contractual covering indemnity obligations of the Subcontractor as contained in this Agreement; (e) Personal Injury Liability, with Employment Exclusion deleted; (f) Property Damage Liability insurance shall provide "X, C, and U" (explosion, collapse, and underground hazard) coverage as and if applicable to Subcontractor's Scope of Work; (g) Products and Completed Operations; and (h) Cross-Liability endorsement.

10.2.1.2.   Workers' Compensation Insurance: such insurance coverage shall be the statutory limits, or, if no statutory limits exist, with a minimum limit of One Million and 00/100 Dollars ($1,000,000.00) per occurrence.

10.2.1.3.   Employer's Liability Insurance: One Million and 00/100 Dollars ($1,000,000.00) per occurrence.

10.2.1.4.   Automobile Liability Insurance (owned, non-owned, and hired): minimum combined single limit for bodily injury and property damage of One Million and 00/100 Dollars ($1,000,000.00) per occurrence and One Million and 00/100 Dollars ($1,000,000.00) annual aggregate.

10.2.1.5.   Umbrella/Excess Liability Insurance: minimum limits of Two Million and 00/100 Dollars ($2,000,000.00) each occurrence and Two Million and 00/100 Dollars ($2,000,000.00) annual aggregate. The certificate of insurance shall explicitly denote the excess nature of the umbrella/excess liability policy in respect of the underlying Commercial General Liability insurance, Automobile Liability insurance, and Employer's Liability insurance.

10.2.1.6.   Subcontractors and sub-subcontractors performing Environmental Work shall maintain Pollution Liability covering the contractor's liability for bodily injury, property damage, and environmental damage resulting from pollution

DocuSign Envelope ID: C90BE966-63D6-4236-A3C7-B06415648D6C

FMGI Subcontract Agreement
Subcontractor Initials: _____    FMGI Initials: _____
Project: Floor & Decor Baton Rouge G/U
Page 7 of 40

and related cleanup costs incurred arising out of the Subcontractor's Work or services to be performed under this Agreement. Coverage shall be provided for both Subcontractor's Work performed on site, as well as during the transport of hazardous materials. Limits of not less than Five Million and 00/100 Dollars ($5,000,000.00) shall be provided. The policy shall name Contractor, Owner, and Architect/Engineer (if any) as Additional Insureds.

11.2.2    *Rating Insurance Requirement.*  All insurance shall be procured from carriers maintaining an A.M. Best Rating of "B+VII" or higher and which are acceptable to Contractor and Owner. Subcontractor shall require all of its Sub-subcontractors to carry insurance coverage of such types and with minimum limits as may be necessary or appropriate in light of the work being performed by such Sub-subcontractor and as may be required by any applicable laws, statutes, rules, or regulations; provided, each and every Sub-subcontractor must, in all cases, provide Workers' Compensation Insurance with statutory limits. Subcontractor shall maintain its required insurance policies, at its sole cost and expense, in full force and effect until this Agreement has been fully performed and final payment of the Contract Amount is made, excepted for such coverage required pursuant to the terms of the Contract Documents to be maintained after all of the foregoing items have been completed.

11.2.3.    *Requirements of Insurance.*  Subcontractor shall require each insurance policy to:

10.2.3.1.    Issue an endorsement to all insurance policies to provide a waiver of subrogation in favor of Contractor and Owner; and,

10.2.3.2.    Provided that Contractor, Owner, and Architect/Engineer and others as provided in the Contract Documents are named as Additional Insureds on each of the insurance policies required under this Agreement, with the exception of the Worker's Compensation coverage, pursuant to an ISO form CG 20 10 10 01 Additional Insured Endorsement, or equivalent coverages for damages arising out the acts or omissions of Subcontract, with no other endorsements relating to "Sole Negligence." Failure by Contractor to request that Subcontractor fulfill its obligation with respect to naming the above-referenced entities as Additional Insureds is not a waiver of this requirement.

11.2.4.    Subcontractor's insurance policies shall state that they are primary and not additional to, or contributing with, any other insurance carried by, or for the benefit of, the Additional Insured. Any such insurance carried by Subcontractor shall be excess of that maintained by Subcontractor. Each liability policy of Subcontractor shall contain a "separation of insureds" provision stating that, except for limits of liability, the policies shall operate as though separate policies had been issued to each insured.

11.2.5.    ~~The insurance company or companies shall not exclude from coverage allegations of the negligence, strict liability, or gross negligence, whether sole or otherwise, of any of the "Additional Insureds," but coverage may be excluded if there has been a final judicial decision from which there is no further right to appeal of the negligence, strict liability, or gross negligence of any of the "Additional Insureds." Additionally, the insurance company or companies shall not include any third-party beneficiary exclusion to the insurance coverage required by this Agreement.~~

11.2.6.    *Requirements of Certificate(s) of Insurance.*  Subcontractor shall provide to Contractor within Five (5) days of execution of this Agreement by Subcontractor and before Subcontractor commences work on the Project, a certificate or certificates of insurance evidencing all required insurance as set forth in this Section. Such certificates of insurance to be provided by Subcontractor under this Agreement shall include no less than the following:

10.2.6.1.    Evidence that each of the requirements of insurance as provided in this Section have been satisfied;

10.2.6.2.    Show FMGI, Inc., Owner, and the subsidiaries, affiliates, officers, directors, employees, and agents of Owner as Additional Insureds and Certificate Holders;

DocuSign Envelope ID: C90BE966-63D6-4239-A2C7-80641B548D6C

FMGI Subcontract Agreement
Subcontractor Initials: _____    FMGI Initials: _____
Project: Floor & Decor Baton Rouge G/U
Page 8 of 40

| | | |
|---|---|---|
| 10.2.6.3. | Show the amounts of all deductibles and self-insured retentions; |
| 10.2.6.4. | Have attached executed and signed copies of all required endorsements to each insurance policy; |
| 10.2.6.5. | Have any and all disclaimers deleted from the certificate or certificates to the extent that such disclaimers conflict with the requirements of this Agreement; |
| 10.2.6.6. | Identify the Project; and, |
| 10.2.6.7. | Contains such other additional information as requested, in writing, by Contractor, or which is required by the Prime Contract or any of the other Contract Documents. |

11.2.7. *Release of Liability Covered by Insurance.* Subcontractor releases the Additional Insureds from any liability covered by the insurance for which subrogation is required to be waived under this Agreement. This release applies to any and all liabilities without regard to how such liabilities are caused and not just to insurance proceeds actually received. Subcontractor shall provide to Contractor at least Thirty (30) days' advance written notice of any contemplated cancellation, non-renewal, or change any of the insurance coverage required under this Agreement.

11.2.8. *Failure of Subcontractor to Procure Insurance.* Subcontractor's failure to procure and maintain the insurance as required by this Agreement shall constitute a material breach of, and default under, this Agreement. If Subcontractor fails to remedy the breach within Five (5) days after notice from Contractor, Contractor ~~may, in addition to any other remedy available to it, at its option and in its sole and absolute discretion, purchase the insurance coverage at Subcontractor's expense, or immediately terminate this Agreement.~~ If Contractor purchases such insurance coverage on behalf of Subcontractor, Subcontractor shall be responsible for the entire cost of that purchased coverage. That Subcontractor could have purchased such insurance from a company other than the one selected by Contractor at a lower rate than paid by Contractor will not reduce the amount that Contractor may deduct from any sums due or to become due to Subcontractor from Contractor under this Agreement or any other agreement between Contractor and Subcontractor to cover the cost of the insurance procured by Contractor for Subcontractor. ~~If Subcontractor terminates this Agreement, Subcontractor shall be responsible for any and all costs incurred by Contractor in obtaining an alternative subcontractor to complete the Scope of Work and the difference between what Subcontractor would have charged to complete the Scope of Work and the amount charged by the alternative subcontractor to complete that Scope of Work.~~

NO
BM

11.2.9. *Insurance Requirements Doe not Limit Liabilities and Obligations.* The insurance requirements as set forth in this Agreement are not intended, and shall not, limit or qualify the liabilities and obligations assumed by Subcontractor and any of its Sub-subcontractors under this Agreement.

11.2.10. *Workers' Compensation Claim.* If Subcontractor fails to carry workers' compensation insurance and a claim is made by an injured worker of Subcontractor against the workers' compensation insurance of Contractor, Subcontractor will indemnify Contractor for any and all monetary expenses incurred out of or as result of that claim, including, but not limited to, the estimated increase in the workers' compensation premiums to be paid by Contractor because of that claim.

12. Workmanship and Performance. Signature by Subcontractor upon this document indicates that Subcontractor is qualified to perform the work contemplated by this Agreement at no less than industry standards for its particular trade. Signature upon this Agreement also acknowledges that the Contractor, in its sole and absolute discretion, is the determining factor as to whether Subcontractor's work adheres to the industry standards for Subcontractor's particular trade. Although payment by Contractor to Subcontractor does not constitute acceptance of the work, payment by Owner to Contractor for Subcontractor's work is a precondition to acceptance by Contractor.

12.1. *Faulty Workmanship.* If Contractor, and testing lab ~~in its sole and absolute discretion,~~ determines that

DocuSign Envelope ID: C90BE955-55D5-4239-A3C7-50541B545D5C

FMGI Subcontract Agreement
Subcontractor Initials: _____    FMGI Initials: _____
Project: Floor & Decor Baton Rouge G/U
Page 9 of 40

Subcontractor's workmanship is improper, Contractor may withhold payment until the workmanship determined to be improper is remedied. If after a reasonable time Contractor determines that Subcontractor is unable or unwilling to remedy faulty workmanship, Contractor may engage whoever its desires to correct the problem. Contractor may notify Subcontractor ~~either orally or~~ in written form of that decision. Subcontractor agrees that if this situation occurs, it is responsible for any costs associated with the repair and agrees that Contractor may withhold the amount from any amounts due to Subcontractor under this Agreement as an option for securing payment.

12.2. *Financial Performance.* ~~If Contractor, in its sole absolute discretion, determines Subcontractor will be unable to finish its Scope of Work for the unpaid amount remaining unpaid under this Agreement, Contractor has the right to withhold any payment that may be due to Subcontractor, and/or may terminate Subcontractor if Subcontractor cannot or will not provide Contractor with adequate written assurance that it has the financial ability to complete its Scope of Work. If there are insufficient funds owing to Subcontractor to complete the work, Contractor shall have a lien on all of Subcontractor's materials stored or located at the Project.~~ Failure of Subcontractor to properly pay its Sub-subcontractors, laborers, materialman, suppliers, vendors, or any other entity employed by Subcontractor shall constitute a material breach of this Agreement. only for work/materials we have been paid for

12.3. *Inability of Subcontractor to Perform.* If Subcontractor becomes insolvent, refuses to perform, or is unable to perform at any time, after commencement of its work, for any reason, Contractor shall have the right ~~and option, at its sole and absolute discretion~~ in determining a reasonable amount of time to declare Subcontractor in default and terminate this and/or any other Agreement existing between Subcontractor and Contractor.

12.4. *Claims.* If Subcontractor causes a claim to be filed against Owner, Contractor or itself ~~or if there is reasonable evidence indicating a reasonable probability that such a claim will be filed,~~ Contractor may terminate this Agreement. ~~If this occurs, the Subcontractor agrees it is responsible for any and all payments incurred by the Contractor necessary to find and contract with a new subcontractor.~~ If one of Subcontractor's sub-subcontractors, laborers, materialmen, suppliers, or vendors issues a stop payment notice to Contractor, or files a claim of lien either against funds owed from Contractor to Subcontractor, or files a claim of lien against the Project, Contractor has the right, but not the duty, to withhold from any amounts due to Subcontractor up to and including twice the amount stated in the stop payment notice or lien. only for work/materials we have been paid for.

12.5. *Abandonment.* ~~If, for whatever cause or reason, the Subcontractor refuses to perform any part of its duties and/or obligations under this Subcontract Agreement, Contractor may immediately determine this Agreement to be in default and may take whatever remedy in its sole and absolute discretion it believes to be reasonable to cure the Subcontractor's breach, including, but not limited to, all the remedies mentioned throughout this Agreement. A dispute between the parties of this Agreement and/or with the Owner, including a dispute concerning the payment or non-payment of funds that the Subcontractor contends are due under this Agreement, does not constitute a proper legal reason for the Subcontractor to cease performance under this Agreement. Acceptance of this Agreement by the Subcontractor either by signature or performance indicates its willingness to abide by these terms.~~ Subcontractor acknowledges the importance of a harmonious relationship and agrees to utilize the dispute resolution mechanism in this Agreement as its sole remedy for resolving disputes. Subcontractor shall have the right to demob the project for non-payment after seven (7) days written notice to Contractor.

13. **Termination of Subcontractor.**

13.1. *Self-Help.* Contractor has the right to take any action under Section 13.2 of this Agreement if Subcontractor, ~~at any time and for any reason~~ if the Subcontractor: after 72 hours written notice to Subcontractor

13.1.1. Fails, refuses, or neglects to supply sufficient properly skilled workmen

13.1.2. Fails, refuses, or neglects to supply the proper quality or quantity of materials, tools, or equipment;

13.1.3. Fails to provide adequate, competent supervision for continual, expeditious prosecution of the work;

13.1.4. Fails to prosecute the work with continuous promptness and diligence, or

13.1.5. Fails in the performance of any part of this Agreement, whether during or subsequent

DocuSign Envelope ID: C90BE986-83D6-4239-A3C7-B0541B648D6C

FMGI Subcontract Agreement
Subcontractor Initials: _____   FMGI Initials: _____
Project: Floor & Decor Baton Rouge GVU
Page 10 of 40

to the period of performance under this Agreement,

13.2. *Notice Period.* Contractor shall have the right and option, at its election, after ~~Forty-eight (48)~~ 72 hours' notice to Subcontractor to:

13.2.1. Provide such workmen, materials, tools, equipment, and/ or supervision as Contractor, in its sole and absolute discretion, deems appropriate to prosecute the work with due diligence, and Contractor has the right to deduct the cost of providing such workmen, materials, tools, equipment, and/ or supervision from any money due or to become due to Subcontractor; or

13.2.2. Enter on the premises of the job site, take possession of all materials ~~or other appliances of any kind~~, terminate Subcontractor's work under this Agreement, and employ any and all persons and materials necessary to complete the work in a prompt and diligent manner.

13.3. *Abandonment of Project by Subcontractor.* If the Subcontractor leaves the job indicating (by written or oral statement or by removing substantially all of its workforce, materials, or equipment), that it has no intention of returning to work on the Project, the Contractor shall have the right and option, without any notice to the Subcontractor, to immediately complete the Subcontractor's work. Such work may be completed by any person or entity selected by the Contractor.

13.4. ~~Waiver of Notice Period by Statement or Action of Subcontractor. If Subcontractor (by oral statement, written statement, or deed) clearly indicates that it has no intention of complying with Contractor's requests or directions as stated in a Forty-eight (48) hour notice, Subcontractor shall be deemed to have waived the opportunity to cure during that Forty-eight (48) hours and Contractor shall have the right and power to take any and all actions encompassed in, or reasonably contemplated by, the notice that Contractor provided Subcontractor.~~

13.5. ~~Termination of Agreement by Contractor for Convenience. Contractor has the right to terminate this Agreement at its convenience. If Contractor terminates the Agreement at its convenience, Contractor will pay Subcontractor for the work in place, but is not obligated to pay Subcontractor for any profits on the Project lost by Subcontractor or for Subcontractor's consequential or incidental damages. If the Agreement is terminated at the convenience of Contractor, Subcontractor must:~~

13.5.1. ~~Protect the work in place as directed by Contractor;~~
13.5.2. ~~Assign any outstanding purchase orders to Contractor as ordered by Contractor;~~
13.5.3. ~~Notify all materialmen, vendors and Sub-subcontractors of the termination;~~
13.5.4. ~~Cooperate with Contractor to minimize the cost of the termination;~~
13.5.5. ~~Transfer title to Contractor of all work, services, and supplies at the site; and,~~
13.5.6. ~~Complete performance of any Work not terminated.~~

~~Should Contractor terminate Subcontractor for cause because of an alleged default by Subcontractor and Subcontractor did not default in its obligations under this Agreement, then that termination shall be considered a termination for the convenience by Contractor.~~

13.6. *Manner of ~~Forty-Eight (48)~~ Notice.* Notice to Subcontractor under this Agreement may be given ~~either orally or~~ in writing to Subcontractor by Contractor. ~~How notice is given to Subcontractor is solely within the sole and absolute discretion of Contractor.~~ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

No ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

13.7. *Withholding Funds and Payment to Others on Termination of Subcontractor.* Subcontractor shall be obligated for any funds expended by Contractor in retaining others to complete Subcontractor's Scope of Work after Subcontractor is terminated. Contractor has the right to withhold such funds from any amount due or to become due to Subcontractor. If the amounts remaining to be made to Subcontractor on work completed

DocuSign Envelope ID: C90BE966-53D6-4239-A3C7-B0541B648D5C

FMGI Subcontract Agreement
Subcontractor Initials: _BN_    FMGI Initials: _____
Project: Floor & Decor Baton Rouge C/U
Page 11 of 40

by it before it was terminated are less than the funds expended by Contractor completing Subcontractor's scope of work, Subcontractor is obligated to pay Contractor the difference. That Subcontractor claims that it could have obtained the workmen, materials, tools, equipment, and/ or supervision at a lower rate than that paid by Contractor shall not affect, or be a defense to, any deduction or damages for which this Agreement provides.

13.8    *Termination by Owner.* Subcontractor understands that Owner has the right and power to terminate the Prime Contract either for convenience or for cause. If Owner terminates its contract with Contractor either for convenience or for cause, Contractor shall have the right to terminate this Agreement with the same notice and on the same monetary terms as contained in the Prime Contract. Contractor will provide Subcontractor with notice of such cancellation by Owner as soon as is practicable after Contractor receives notice of the termination by Owner.

14.    **Delays in Work.**

14.1    *No Damage for Delay.* If Subcontractor is delayed because of an act or omission of Contractor or by any other contractor or subcontractor on the Project, or by any delay to which Subcontractor has not contributed, the time for completion of the work shall be extended for a period of time equivalent to that lost by Subcontractor, ~~as determined by Contractor~~. Any such request for extension of time must be made by Subcontractor in writing to Contractor within five (5) days of the ~~Act or Omission~~ causing the delay. ~~The extension of time shall be Subcontractor's sole and exclusive remedy for any delay and Subcontractor shall have no claim for damages against Contractor, Owner, Architect, or any of their sureties because of the delay.~~ If said delay is longer than 3 days, Subcontractor will demob the site and be entitled to a demob/remob fee.

14.2    *Force Majeure or Act of God.* If Subcontractor is delayed in the performance of the work under this Agreement by any act, neglect, or fault of Owner or Contractor, or by any damage caused to the Project by fire, lightning, earthquake, cyclone or other circumstance beyond the control of Subcontractor, the Completion Date shall be extended for a period equivalent to the time lost by reason of any such circumstance. Subcontractor shall not be entitled to an extension of time for any such delay unless Subcontractor gives Contractor written notice of such delay within five (5) days after the ~~commencement~~ of such delay, ~~it being specifically understood and agreed that an extension of time shall be the sole remedy of Subcontractor for any such delay, and Subcontractor shall have no claim for damages against the Owner, Contractor, the Architect, or any of their sureties because of the delay.~~ If said delay is longer than 3 days, Subcontractor will demob the site and be entitled to a demob/remob fee.

15.    **Contract Payment Provisions.**

15.1    *Contractor's and Subcontractor's Understanding of Payment:*

15.1.1    Subcontractor agrees and understands that any payment it may receive or believe it is owed is conditioned on the occurrence of all of the following:

15.1.1.1.    Approval or acceptance of Subcontractor's work by Owner, and/or Architect, and/or Contractor, and/or the governing/ approving authority as provided for in any of the Contract Documents.

15.1.1.2.    ~~Receipt of funds by Contractor from Owner applicable to the pay request or application (interim or Final Payment request) submitted by Subcontractor to Contractor and,~~ net 30 days after invoice date

15.1.1.3.    Fulfillment of all contractual responsibilities by Subcontractor as set forth in this Agreement.

15.1.2    ~~Subcontractor enters into this Agreement with the willingness, and as a term of this Subcontract Agreement, to expect payment from the Contractor if and only if those funds become available from Owner. Payment by Owner to Contractor for Subcontractor's work is a condition precedent of the obligation for Contractor to pay Subcontractor for that work. If and only if those funds are received by Contractor from Owner, Contractor will pay Subcontractor the amount owed by Contractor out of those funds. Such payment will be made within fifteen (15) days from and after Contractor's receipt of those funds or the time period for which State law provides of the State where the Project is located, whichever is the shorter.~~

DocuSign Envelope ID: C90BE966-63D6-4239-A3C7-B0541B546D5C

FMGI Subcontract Agreement
Subcontractor Initials: _M_ _____    FMGI Initials: _____
Project: Floor & Decor Baton Rouge G/U
Page 12 of 40

time period.

15.1.3. ~~If Owner or its representative fails to promptly pay, partially pays, or fails to ever pay, Subcontractor knowingly and willingly accepts such risk as a condition of this Agreement and so acknowledges that Contractor is not liable for any part of the unpaid amount under any theory of law.~~ The provisions of this Agreement concerning the payment to Subcontractor will control the obligation of Contractor to pay Subcontractor shall control over any other contract or agreement between Contractor and any other person touching or concerning this Project. ~~Subcontractor acknowledges and agrees that it is not an intended third party beneficiary of the contract or agreement between Owner and Contractor. Should Subcontractor bring a claim against Contractor for any funds owed under a payment application on which Contractor has not received payment from Owner, Subcontractor shall pay all actual costs and reasonable attorneys' fees incurred by Contractor in getting such claim dismissed.~~

15.1.4. ~~As part of this Agreement, Contractor agrees to either pursue Owner on behalf of the Subcontractor for any unpaid amounts that are justly due to Subcontractor, or, provide the Subcontractor with all the information required in order to pursue proper legal action against the non-paying Owner.~~

15.1.4.1 ~~In the event Contractor undertakes the effort to pursue Owner for non-payment, Subcontractor agrees to provide monetary support for the effort. Subcontractor's reimbursement shall be proportional to the total amount sought by Contractor on behalf of Subcontractor. For instance, if Seventy-five Percent (75%) of the total monetary damages sought by Contractor in its claim against Owner are for funds due to Subcontractor under its outstanding payment applications, Subcontractor shall be responsible for Seventy-five Percent (75%) of the actual costs and fees, and reasonable attorneys' fees incurred by Contractor. Contractor shall have the right to deduct such costs, fees, and attorneys' fees from any amount due or to become due from Contractor to Subcontractor.~~

15.1.4.2 ~~If Contractor determines to undertake any legal remedies for and on behalf of Subcontractor it will do so in a timely manner to sure no legal remedies are lost.~~

15.1.4.3 ~~If Contractor determines in its sole discretion that pursuing legal remedies against Owner is not in the best interest of the entire Project, Contractor will inform Subcontractor in a timely manner of its decision so Subcontractor may pursue any legal remedies it may have available to it. In this event, Contractor will assign to Subcontractor any claim that Contractor has or might have attributable to any outstanding, unpaid payment applications of Subcontractor on the Project.~~

15.1.5. NOTHING CONTAINED WITHIN THIS SUBCONTRACT AGREEMENT SHALL BE INTERPRETED AS A PROSPECTIVE WAIVER OF ANY LIEN RIGHTS OF ANY OF THE PARTIES.

15.1.6. ~~Subcontractor realizes fully and accepts as part of the terms of this negotiated Agreement that any and all payments it may receive or may be entitled to are based only on the Owner's willingness to pay the Contractor and the Subcontractor shares the risk of non-payment with the Contractor. Payment by the Owner on Requests For Payment from other Subcontractors is not an indication or guarantee that a payment is forthcoming.~~

15.1.7. ~~In assessing whether the Owner has the financial ability to pay the Contractor, the Subcontractor has done an independent investigation of the Owner's ability to so pay and has not relied on any representation of the contractor concerning the Owner's ability to pay or on any source provided to Subcontractor by the Contractor.~~

15.1.8. ~~Subcontractor agrees that it has neither a property interest nor any right to such payment or any other payment under this Agreement until such payment is actually received by~~

DocuSign Envelope ID: C90BE965-83D5-4239-A3C7-805418545D5C

FMGI Subcontract Agreement
Subcontractor Initials: _____    FMGI Initials: _____
Project: Floor & Decor Baton Rouge G/U
Page 13 of 40

~~Subcontractor.~~

15.1.9. Unless otherwise agreed by Contractor, in writing, none of the following shall constitute acceptance of Subcontractor's work or compliance with the requirements of the Contract Documents: issuance of any payment; certificate for payment; final payment; or, partial occupancy or use of a portion of the work completed by Subcontractor. Acceptance of final payment by Subcontractor shall constitute a waiver of any and all claims of Subcontractor or any of its Sub-subcontractors that arise out of or concern this Project.

15.1.10. ~~If Contractor pays a payment application of Subcontractor for which Contractor has not received payment from Owner as an accommodation to Subcontractor, such payment shall not constitute a waiver of the pay-when-paid provisions as contained in this Agreement.~~

15.2 Contract Amount.

15.2.1. ~~Subject to the terms of this Agreement, Subcontractor agrees to accept in lieu of payment from Owner to Contractor the Contract Amount for labor, materials, service, and proper payments and release documents required by this Agreement.~~

15.3. Retainage.

15.3.1. ~~If payment is received by Contractor from Owner,~~ Subcontractor will receive payment less 10% retainage, of the value of the labor, materials, and service, incorporated in the work and of materials stored on the job site in a manner acceptable to Contractor, less the aggregate of previous payments, provided that the Subcontractor provides the proper documents required in order to receive payment as dictated by this Agreement and the Prime Contract. Payment is not due to the Subcontractor unless and until the payment documents required by this Agreement are received by Contractor. ~~Electronic copies are not acceptable, unless authorized in writing by Contractor.~~

15.3.2. Subcontractor agrees and understands that it will receive its final payment under the following conditions:

15.3.2.1. ~~If and only if the Owner or its agent makes such payment to Contractor;~~
15.3.2.2. ~~Subcontractor will receive the total amount of the balance only if the Owner pays the complete balance to Contractor. Failing full payment, Subcontractor agrees to accept any partial amount paid by the Owner to Contractor.~~
15.3.2.3. Completion of all Subcontractor's work.
15.3.2.4. Acceptance of that work by the Owner.
15.3.2.5. Furnishing to Contractor of evidence by Subcontractor to Contractor's satisfaction that Subcontractor has paid, in full (if paid in full), all labor, material accounts, and applicable taxes incurred by Subcontractor in connection with this Project.
15.3.2.6. The execution and delivery by Subcontractor to Contractor of the final lien waiver.
15.3.2.7. ~~Receipt of final payment for that work by Contractor from the Owner.~~

15.3.3. No payment to Subcontractor shall operate as an approval of Subcontractor's work or materials, or any part of that work. ~~Subcontractor expressly waives any rights it may have under law requiring that funds retained out of contracts for the improvements of real property be paid into an escrow account and held for the benefit of the payee or under any other law with respect to retainages. Acceptance by Subcontractor of final payment on the Project constitutes a waiver of any and all claims that Subcontractor has, or might have, against Contractor, Owner, on either of their sureties.~~

15.3.4. ~~Subcontractor understands and agrees that One Hundred Dollars ($100.00) of that final payment constitutes consideration for this waiver.~~

15.3.5. Contractor reserves the right, but undertakes no duty, to pay by check jointly made to Subcontractor, and its sub-subcontractors, suppliers, or materialmen. Payment made in this manner constitutes payments toward the amount for which this Agreement provides, thus reducing the amount owed on this Agreement.

If joint checks are elected, the checks will reflect amounts agreed to by Subcontractor.

DocuSign Envelope ID: C90BE966-83D6-4239-A3C7-B0541B548D6C

FMGI Subcontract Agreement
Subcontractor Initials: _____ FMGI Initials: _____
Project: Floor & Decor Baton Rouge G/U
Page 14 of 40

16. Procedure for Payment.

16.1. Subcontractor's Requisition Statement for Interim Payment. Subcontractor is responsible for submitting to Contractor Waivers of Lien from each of Subcontractor's sub-subcontractors, suppliers, and materialmen for materials and labor for each requisition. Each submittal must be:

16.1.1. Complete with sufficient breakdown data to permit checking and approval of work thus far accomplished.

16.1.2. Delivered by Subcontractor to Contractor not later than ten (10) days prior to the end of any month during which Subcontractor has performed work or furnished materials to the job for which Subcontractor requests payment. Any application for payment that is delivered late shall not be processed until the next pay period.

16.1.3. On Contractor's Application for Payment Form (a copy of which shall be provided by *[handwritten: we will need the]* Contractor to Subcontractor upon request). The completed Application for Payment *[handwritten: pay app forms i]* Form shall include a lien waiver provided by Contractor. No other form is acceptable *[handwritten: Excel.]* unless approved by Contractor (a copy of which is attached to this Agreement). By signing this Agreement, Subcontractor agrees to sign an interim lien waiver that contains the following when receiving an interim payment:

Subcontractor hereby ~~unconditionally~~ waives, releases, and relinquishes any and all liens or claims or rights upon the Property of the Owner and all improvements on it, on account of services, materials, equipment, labor or other items previously furnished by Subcontractor through the date of the Progress Payment, under or in connection with the Agreements or the Property. Subcontractor further agrees to indemnify and hold Contractor, Owner, and their sureties harmless from any and all expenses, including costs and reasonable attorneys' fees, from any and all claims, liens or financial obligations arising under, in connection with or by virtue of the Agreements or Work relating to prior work and requests for payment. ~~The foregoing certification, release, and indemnification are not contingent in any respect nor are they subject to any condition precedent.~~ *[handwritten: conditional or a month in arrears.]* Subcontractor acknowledges that the foregoing representations are made to induce Contractor and/or Owner to make the Progress Payment, knowing that Contractor and/ or Owner rely on the representations contained in this document.

By accepting any interim or progress payment, Subcontractor agrees to the foregoing language by negotiation of the check for the interim payment even if the lien release signed by Subcontractor in obtaining such payment fails to contain the foregoing language.

16.2. Subcontractor's Requisition Statement for Final Payment. Before final payment is processed, Subcontractor shall furnish Contractor with a completed Waiver of Lien from Subcontractor and all of its sub-subcontractors, suppliers, vendors, and materialmen who performed labor on or supplied materials for the Project.

16.3. ~~Payment of Final Retainage. Subcontractor agrees that Final Retainage will be paid only if Contractor receives Final Payment from the Owner. If payment is not made to Contractor by the Owner, no payment shall be due from Contractor to Subcontractor.~~

16.4. Final Payment. To receive final payment Subcontractor must abide by all terms of this Agreement. Final payment to Subcontractor is not a waiver by Contractor of any claim Contractor may have against Subcontractor. Each submittal must contain the following

DocuSign Envelope ID: C9DBE866-83D6-4239-A3C7-B0541B545D6C

FMGI Subcontract Agreement
Subcontractor Initials: [signature]    FMGI Initials: [signature]
Project: Floor & Door Baton Rouge G/U
Page 15 of 40

information.

16.4.1.  Be a complete with sufficient breakdown data to permit checking and approval of work thus far accomplished,

16.4.2.  Be on Contractor's Application for Payment Form (a copy of which is attached to this Agreement),

16.4.3.  Include a final lien waiver provided by Contractor. No other form is acceptable unless approved by Contractor (a copy of which is attached to this Agreement). By signing the final lien waiver, Subcontractor agrees to the following when receiving Final Payment:

Subcontractor ~~unconditionally~~ certifies that it has been paid in full for all work, labor, material, equipment, or services of any kind furnished by or through Subcontractor relating to or concerning the Property or the Agreements. Subcontractor waives and releases any and all claims, demands, actions, losses, causes of action, or other rights against Owner, General Contractor, their sureties, and the Property, at law, under a contract, in a tort, equity or otherwise, and any and all liens or claims of liens or any right against any labor and/or material payment bond it has, may have had or may have in the future upon the foregoing described Property or in relation to the Subcontractor's performance of work on or the furnishing of equipment, services, and/or labor for the Project. Subcontractor agrees to indemnify, hold harmless, and defend Contractor, Owner, and their sureties from and against any claims, damages, losses and/or expenses, including attorney's fees, which Contractor, Owner, or their sureties may sustain as a result of any liens arising out of services rendered, work performed, and/or materials furnished by Subcontractor or by any party retained by, through or under Subcontractor in connection with the design and/or construction of the aforesaid facility. ~~The foregoing certification, release, and indemnification are not contingent in any respect nor are they subject to any condition precedent. Subcontractor acknowledges that the foregoing representations are made to induce Contractor and/or Owner to make the Final Payment, knowing that Contractor and/or Owner relies on the representations contained in this document.~~

This waiver and Release applies to all facts, acts, events, circumstances, changes, constructive or actual delays, accelerations, extra work, disruptions, interferences, change orders, and the like which have occurred, or may be claimed to have occurred prior to the date of this Waiver and Release.

This Final Waiver and Release shall be binding on Subcontractor and the successors and assigns of Subcontractor and shall inure to the benefit of the Contractor and/or Owner and respective successors and assigns of Contractor and/or Owner.

By accepting the final payment, Subcontractor agrees to the foregoing language by negotiation of the check for the final payment even if the final lien release signed by Subcontractor in obtaining such payment fails to contain the foregoing language.

DocuSign Envelope ID: C90BE986-83D6-4239-A3C7-B0541B548D6C

FMGI Subcontract Agreement
Subcontractor Initials: _____    FMGI Initials: _____
Project: Floor & Decor Baton Rouge G/U
Page 16 of 40

16.5    *Payment Requirements.*

16.5.1.    *Payment Use Restriction.* ~~All payments made by Contractor, its surety, or Owner to Subcontractor are made to, and accepted by, Subcontractor as trustee for the benefit of Subcontractor's employees, laborers, materialmen, and sub-subcontractors.~~ All payments received by Subcontractor shall first be used to satisfy any indebtedness owed by Subcontractor to person or entities furnishing labor or materials for use in performing or incorporation into Subcontractor's Work. Contractor shall have the right, at all times, to contact Subcontractor's sub-subcontractors and materialmen to assure that they are being paid by Subcontractor for labor and materials furnished for use in performing Subcontractor's Work. Subcontractor shall assure that all amounts owed to or on behalf of its employees are timely paid, including, but not limited to, all wages, employee benefits, withholding taxes, and all other amounts.

16.5.2.    *Subcontractor Payment Failure.* If Contractor has reason to believe that labor, material, or other obligations incurred in the performance of Subcontractor's work are not being, or may not be, paid, Contractor may take any steps it deems necessary to assure that such obligations are paid and that Subcontractor is fulfilling its obligations as trustee with respect to the payments made to it under this Agreement. Such steps may include, but not be limited to, the issuance of checks jointly to Subcontractor and the person or entity to whom Subcontractor owes an obligation, ~~or direct payment such person or entity unless Subcontractor supplies evidence to the satisfaction of Contractor that such obligations have been satisfied.~~ Any such payments made by Contractor shall be credited against funds otherwise due Subcontractor under this Agreement. Subcontractor also agrees, if required by the Owner, to execute documents provided by the Owner pertaining to the issuance of joint checks to Subcontractor's sub-subcontractors and materialmen.

*[margin note:]* If joint checks are elected, th checks will reflect amount agreed to by Subcontractor

17.    **Indemnification Covenant.**

17.1.    *Indemnification by Subcontractor.* Subcontractor agrees to defend, indemnify and hold Contractor and the Owner harmless from any Claim. This Indemnification Covenant includes, but not is not limited to, injuries and any Claims caused in whole or in part by Subcontractor's negligence, acts, or omissions. One Hundred and 00/100 Dollars ($100.00) of the Total Contract price is paid in exchange for the agreement to indemnify, defend, and hold Contractor and Owner harmless under this provision of this Agreement. Subcontractor's obligation to provide a defense for an indemnified party shall arise regardless of the merits of the matter and shall continue until a final determination of fault or liability is made. Contractor shall be entitled to recover reasonable attorneys' fees, actual court costs, and all other costs, expenses, and liabilities by it in an action brought to enforce any part of this indemnity obligation. Subcontractor's obligations under this Section shall not limit Contractor's other rights and remedies under this Agreement, any applicable Statute or law, or common law. Notwithstanding the foregoing, Subcontractor's indemnity obligations shall not include Claims of, or damages resulting from, gross negligence or willful, wanton, or intentional misconduct of any indemnified party or its officers, directors, agents, or employees, or for violations of statutes or punitive damages except, and to the extent, the violation of a statute or punitive damages are caused by, or resulted from, the acts or omissions of a Subcontractor or any of Subcontractor's contractors, subcontractors, materialmen, agents, or consultants or their respective employees.

17.2.    *State Specific Indemnification Provisions.*

17.2.1.    ~~*Florida Projects.* If the Project is located within the State of Florida, the following Subsections shall control as to the indemnification provisions applicable to the Project:~~

N/A

17.2.1.1.    ~~Subcontractor shall indemnify, defend (with counsel reasonably satisfactory to Contractor) and hold harmless Contractor, or Owner, and each of their officers, directors, agents, employees ("Contractor Indemnitees") from any and all Claims of whatever kind or nature arising from this Agreement or the performance of the Scope of Work by Subcontractor or any person or entity acting on behalf of Subcontractor. Subcontractor's obligation to indemnify the Contractor Indemnitees shall be limited to the greater of the following amounts: Two Million and 00/100 Dollars ($2,000,000.00), or the~~

DocuSign Envelope ID: C30BE968-63D6-4239-A3C7-B0541B546D6C

FMGI Subcontract Agreement
Subcontractor Initials: _____    FMGI Initials: _____
Project: Floor & Decor Baton Rouge G/U
Page 17 of 40

Contract Amount. Contractor and Subcontractor agree the limitation on the indemnification obligation as stated in this Subsection is an amount with a reasonable commercial relationship to this Agreement. This indemnity obligation is part of the Project specifications or bid documents. Subcontractor's obligation to provide a defense for an indemnified party shall arise regardless of the merits of the matter and shall continue until a final determination of fault or liability is made. Contractor shall be entitled to recover reasonable attorneys' fees, actual court costs, and all other costs, expenses, and liabilities by it in an action brought to enforce any part of this indemnity obligation. Subcontractor's obligations under this Section shall not limit Contractor's other rights and remedies under this Agreement, any applicable Statute or law, or common law. Notwithstanding the foregoing, Subcontractor's indemnity obligations shall not include Claims of, or damages resulting from, gross negligence or willful, wanton, or intentional misconduct of any indemnified party or its officers, directors, agents, or employees, or for violations of statutes or punitive damages except, and to the extent, the violation of a statute or punitive damages are caused by, or resulted from, the acts or omissions of a Subcontractor or any of Subcontractor's contractors, subcontractors, materialmen, agents, or consultants or their respective employees.

17.2.2. Texas Projects. If the Project is located within the State of Texas, the following Subsections shall control as to the indemnification provisions applicable to the Project.

17.2.2.1.

N/A

EXCEPT WITH RESPECT TO CLAIMS RELATING TO BODILY INJURY OR DEATH OF AN EMPLOYEE AS DEFINED IN THE SECTION BELOW, SUBCONTRACTOR AGREES TO AND SHALL DEFEND, INDEMNIFY, AND HOLD HARMLESS (COLLECTIVELY "INDEMNIFY") CONTRACTOR, ITS PARTNERS, MEMBERS, DIRECTORS, OFFICERS, AGENTS, AND EMPLOYEES, AND ANY PARTIES REQUIRED TO BE INDEMNIFIED BY CONTRACTOR UNDER THE CONTRACT DOCUMENTS (COLLECTIVELY THE "INDEMNIFIED PARTIES" OR INDIVIDUALLY AN "INDEMNIFIED PARTY") FROM AND AGAINST ANY AND ALL CLAIMS, LOSSES, DAMAGES, DEMANDS, INJURIES, JUDGMENTS, CAUSES OF ACTION, SUITS, AND LIABILITY OF EVERY KIND, INCLUDING, BUT NOT LIMITED TO, ALL EXPENSES OF LITIGATION, COURT COSTS AND ATTORNEYS' FEES (COLLECTIVELY "CLAIMS"), FOR BODILY OR PERSONAL INJURIES, INCLUDING DEATH, TO ANY PERSON OR DAMAGES TO OR DESTRUCTION OF PROPERTY, INCLUDING THE LOSS OF USE THEREOF, ACTUALLY OR ALLEGEDLY OCCASIONED BY, CONTRIBUTED TO, OR ARISING OUT OF, IN WHOLE OR IN PART, THE SUBCONTRACTOR'S SCOPE OF WORK, THE PERFORMANCE OF THE SCOPE OF WORK BY SUBCONTRACTOR, OR THIS SUBCONTRACT AGREEMENT, INCLUDING, BUT NOT LIMITED TO, CLAIMS OCCASIONED BY, CONTRIBUTED TO, OR ARISING OUT OF, IN WHOLE OR IN PART, THE NEGLIGENCE, GROSS NEGLIGENCE, BREACH OR WARRANTY, BREACH OF CONTRACT, VIOLATION OF ANY STATUTE, RULE, OR REGULATION OR OTHER ACT OR OMISSION BY SUBCONTRACTOR, ITS EMPLOYEES, AGENTS, OR ANY SUBCONTRACTOR OF SUBCONTRACTOR OF ANY TIER, OR THEIR RESPECTIVE AGENTS OR EMPLOYEES, OR ANY OTHER PARTY FOR WHOSE ACTS SUBCONTRACTOR IS LIABLE, AND INCLUDING, BUT NOT LIMITED TO, ALL EXPENSES OF LITIGATION, COURT COSTS, AND ATTORNEYS' FEES INCURRED BY THE INDEMNIFIED PARTIES IN DEFENSE OF SUCH CLAIMS. SUBCONTRACTOR'S OBLIGATION TO INDEMNIFY SHALL APPLY EVEN IF SUCH CLAIMS ARE ACTUALLY OR ALLEGEDLY CAUSED IN WHOLE OR IN PART BY THE ACTS, OMISSIONS, OR NEGLIGENCE OF AN INDEMNIFIED PARTY EVEN IF SUCH NEGLIGENCE OR OTHER ACTS OR OMISSIONS ARE ACTIVE OR PASSIVE, DIRECT OR INDIRECT, SOLE OR CONCURRENT. THIS INDEMNITY AGREEMENT IS INTENDED TO INDEMNIFY THE INDEMNIFIED PARTIES FROM THE CONSEQUENCES OF THEIR OWN NEGLIGENCE, AS PROVIDED ABOVE. NOTWITHSTANDING THE

DocuSign Envelope ID: C90BE968-83D8-4238-A3C7-B0841B848D5C

FMGI Subcontract Agreement
Subcontractor Initials: _____    FMGI Initials: _____
Project: Fleur & Decor Baton Rouge G/U
Page 18 of 40

FOREGOING, IF SUBCHAPTER C OF CHAPTER 151 OF THE TEXAS INSURANCE CODE APPLIES TO THIS SUBCONTRACT, THIS INDEMNITY PROVISION SHALL NOT APPLY TO THE EXTENT THAT IT REQUIRES SUBCONTRACTOR TO INDEMNIFY AN INDEMNIFIED PARTY AGAINST A CLAIM CAUSED BY THE NEGLIGENCE OR FAULT, THE BREACH OR VIOLATION OF A STATUTE, ORDINANCE, GOVERNMENTAL REGULATION, STANDARD, OR RULE, OR THE BREACH OF CONTRACT OF THE INDEMNIFIED PARTY, ITS AGENT OR EMPLOYEE, OR ANY THIRD PARTY UNDER THE CONTROL OR SUPERVISION OF THE INDEMNIFIED PARTY, OTHER THAN SUBCONTRACTOR OR ITS AGENT, EMPLOYEE, OR SUBCONTRACTOR OF ANY TIER.

17.2.2.2. INDEMNITY FOR EMPLOYEE CLAIMS: SUBCONTRACTOR AGREES TO AND SHALL DEFEND, INDEMNIFY, AND HOLD HARMLESS (COLLECTIVELY "INDEMNIFY") CONTRACTOR, OWNER, AND ANY OTHER PARTIES REQUIRED TO BE INDEMNIFIED BY CONTRACTOR UNDER THE CONTRACT DOCUMENTS AND THEIR REPRESENTATIVES, PARTNERS, MEMBERS, DIRECTORS, OFFICERS, AGENTS, EMPLOYEES, INVITEES, OR LICENSEES (COLLECTIVELY THE "INDEMNIFIED PARTIES" OR INDIVIDUALLY AN INDEMNIFIED PARTY") FROM AND AGAINST ANY AND ALL CLAIMS, LOSSES, DAMAGES, DEMANDS, INJURIES, JUDGMENTS, CAUSES OR ACTION, SUITS, AND LIABILITY OF EVERY KIND, INCLUDING, BUT NOT LIMITED TO, ALL EXPENSES OF LITIGATION, COURT COSTS AND ATTORNEY'S FEES (COLLECTIVELY "CLAIMS"), FOR BODILY INJURY OR DEATH OF ANY EMPLOYEE OF SUBCONTRACTOR, ITS AGENTS, OR ITS SUBCONTRACTORS OF ANY TIER (COLLECTIVELY "EMPLOYEE" FOR THE PURPOSE OF THIS SECTION), ACTUALLY OR ALLEGEDLY OCCASIONED BY, CONTRIBUTED TO, OR ARISING OUT OF, IN WHOLE OR IN PART, THE SUBCONTRACT WORK, THE PERFORMANCE OF THE SUBCONTRACT WORK, OR THIS SUBCONTRACT, INCLUDING BUT NOT LIMITED TO CLAIMS DUE TO NEGLIGENCE, GROSS NEGLIGENCE, BREACH OF WARRANTY, BREACH OF CONTRACT, VIOLATION OF ANY STATUTE, RULE, OR REGULATION, OR OTHER ACT OR OMISSION BY SUBCONTRACTOR, ITS EMPLOYEES, AGENTS, OR ANY SUBCONTRACTOR OR SUBCONTRACTOR OF ANY TIER, OR THEIR RESPECTIVE AGENTS OR EMPLOYEES, OR ANY OTHER PARTY FOR WHOSE ACTS SUBCONTRACTOR IS LIABLE. SUBCONTRACTOR'S OBLIGATION TO INDEMNIFY SHALL APPLY EVEN IF SUCH CLAIMS ARE ACTUALLY OR ALLEGEDLY CAUSED IN WHOLE OR IN PART BY THE ACTS, OMISSIONS, OR NEGLIGENCE OF AN INDEMNIFIED PARTY EVEN IF SUCH NEGLIGENCE OR OTHER ACTS OR OMISSIONS ARE ACTIVE OR PASSIVE, DIRECT OR INDIRECT, SOLE OR CONCURRENT. THIS INDEMNITY AGREEMENT IS INTENDED TO INDEMNIFY THE AFOREMENTIONED INDEMNIFIED PARTIES FROM THE CONSEQUENCES OF THEIR OWN NEGLIGENCE, AS PROVIDED ABOVE.

17.2.2.3. SUBCONTRACTOR EXPRESSLY AGREES THAT THIS INDEMNIFICATION, DEFENSE AND HOLD HARMLESS AGREEMENT IS VALID AND EFFECTIVE AS OF THE DATE OF THE SUBCONTRACT EVEN IF THE SUBCONTRACT IS NOT FULLY EXECUTED UNTIL AFTER THE DATE OF THE SUBCONTRACT AND IS INTENDED TO INCLUDE, WITHOUT LIMITATION, ALL CLAIMS, EVENTS, OR LOSSES WHICH MAY HAVE OCCURRED ON OR AFTER THE DATE OF THE SUBCONTRACT REGARDLESS OF WHETHER THE SUBCONTRACT WAS FULLY EXECUTED PRIOR TO THE DATE OF THE CLAIM, EVENT, OR LOSS.

17.3. *Savings Clause.* IN THE EVENT THAT THE LAW OF THE STATE IN WHICH THE PROJECT

DocuSign Envelope ID: C90BE966-63D6-4239-A3C7-BD641B546D6C

IS LOCATED (OR OTHER APPLICABLE LAW) LIMITS THE INDEMNITY OBLIGATIONS OF SUBCONTRACTOR, THEN THE INDEMNITY OBLIGATIONS OF SUBCONTRACTOR SHALL BE ENFORCED TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, AND THIS ARTICLE SHALL BE CONSTRUED TO CONFORM TO SUCH LAW.

17.4. ~~Duty to Defend. As part of its duty to defend, Subcontractor shall do the following:~~

> 17.4.1. ~~At Subcontractor's cost, expense, and risk, defend any and all claims defined in this Section 17 that may be brought or instituted by third persons including, but not limited to, governmental, state, or local agencies; Subcontractor's employees, laborers, sub-subcontractors, or materialmen; or any other person or entity;~~

> 17.4.2. ~~Pay and satisfy any judgment or decree that may be rendered against any of the entities to be indemnified under this Section 17 arising out of any such claim; and,~~

> 17.4.3. ~~Reimburse the indemnified parties for any and all actual fees or costs, and reasonable attorneys' fees incurred by any of those parties in connection with the claim or in enforcing the indemnity granted or provided under this Section 17.~~

**NO**

17.5. *Conflict with State Specific Indemnification Provisions.* If any of the State Specific Sections of this Section 16 conflicts with any other provision or Section of this Agreement, the terms and provisions of the applicable State Specific Section shall control.

18. **Cleaning.** Subcontractor is responsible for all of its own clean up and placement of debris generated by its work in a timely manner in the dumpster provided by Contractor when and as directed by Contractor. Subcontractor shall leave the area in broom clean condition when requested by Contractor. Contractor's notice that Subcontractor has failed to clean the Project as required by this Section may be given orally or in writing. Subcontractor shall have ~~Twenty-Four (24)~~ hours to clean the Project. Should Subcontractor fail to clean the Project within that time period, Contractor shall have the right, but not the duty, to hire another person or entity to clean the Project and backcharge Subcontractor. That Subcontractor alleges or proves that it could have cleaned the area at a lower cost than that paid by Contractor shall not be a defense to the requirement that Subcontractor reimburse Contractor for the entire amount incurred by Contractor in cleaning the Project.

19. **Gate Usage.** All of Subcontractor's employees, independent contractors, suppliers, materialmen, and vendors shall use the Gate designated for their use by Contractor at this Project.

20. **Assignment.**

20.1. Subcontractor shall not, without Contractor's written agreement or consent:

> 20.1.1. Let, assign, or transfer all or any portion of this Agreement;

> 20.1.2. Let, assign, or transfer any interest in this Agreement;

> 20.1.3. Factor any invoice or pay application issued by Subcontractor to Contractor seeking payment; or

> 20.1.4. Let, assign, or transfer the rights of Subcontractor to receive from Contractor any monies due or to become due under this Agreement.

20.2. If Subcontractor attempts to engage in any of the actions prohibited by this Section 21 without Contractor's written consent, the letting, assignment, transfer, or factoring shall be void and of no effect, and shall not create, transfer, or vest any right or right of action in the assignee. Additionally, Subcontractor shall be obligated to reimburse Contractor for all actual fees and costs, and reasonable attorneys' fees in dealing with the assignee. Contractor shall have the right to deduct these attorneys' fees and costs from any amounts due or to become due to Subcontractor.

21. **Taxes.** Subcontractor shall pay all taxes, including but not limited to Federal withholding, State withholding, any applicable local withholding, FICA, and any other taxes imposed on it as an employer in connection with the performance of this Agreement. Subcontractor must furnish evidence, when required by Contractor, showing that all such payments required to be made have been made. Subcontractor shall pay all local, State, and Federal taxes in connection with his work, and the purchase of materials for the completion of its work on the Project. Subcontractor shall secure and pay for all licenses ~~and permits~~ necessary for its work on this Project.

22. **Safety.**

22.1. Subcontractor shall comply with all Federal, State, and local safety laws or regulations, shall

DocuSign Envelope ID: C9DBE906-63D6-4239-A3C7-B05418648D5C

FMGI Subcontract Agreement
Subcontractor Initials: _BV_    FMGI Initials: _____
Project: Floor & Decor Baton Rouge O/U
Page 20 of 40

comply with any and all safety programs instituted by Contractor or Owner, and shall carry out any and all safety measures announced by Contractor or Owner. *[margin note: We need a copy of all safety measure required that are above and beyond OSHA laws and regulations.]*

22.2  Subcontractor understands and agrees that Contractor's safety program may have certain fines associated with the failure to abide by the program. The fines are available from Contractor on request by Subcontractor. We need a copy of the fine schedule. *[margin note: Abide by OSHA.]*

22.3  Subcontractor understands and agrees that Contractor has the right to deduct all such fines from any amounts due or to become due to Subcontractor from Contractor.

22.4  Subcontractor warrants and represents that it understands and will comply with any and all safety policies and procedures of Contractor or Owner applicable to the Scope of Work and/or this Project.  Again, we need to know what will be required over and above OSHA standards

23.  **Time of the Essence of Agreement.**  Time is of the essence of this Agreement and any breach of this Agreement shall go to the essence of the Agreement. Subcontractor, in agreeing to complete the Scope of Work within the time for which this Agreement provides, ~~has taken into consideration and made allowances for all hindrances and delays incident to his work.~~

24.  **Claims and Disputes.**

24.1  *Claims.*

24.1.1  Any claim by Subcontractor must be submitted to Contractor, in writing, within Seven (7) days after Subcontractor first recognizes the condition giving rise to such claim or within Seven (7) days after Subcontractor first recognizes the condition giving rise to the claim, whichever is later.

24.1.2  Subcontractor shall provide Contractor with all the particulars of the claim including all supporting documentation within Thirty (30) days after the notice of the claim is delivered, unless Contractor agrees, in writing, to an extension of time. Failure to submit all of the particulars of the claim, including all supporting documentation, within the time provided in Section 24.1.1 and this Section shall relieve Contractor of any and all obligations for that claim. ~~Any additional claim made after the initial claim is submitted to Contractor and which is based on or arises out of the same event as the initial claim will not be considered and is deemed waived.~~

24.1.3  Contractor shall issue a final determination of any such claim submitted by Subcontractor within Thirty (30) days of the date on which Subcontractor submits all of the supporting documentation in support of its claim. Subcontractor must file a claim within Sixty (60) days of receipt of the final determination from Contractor or the file determination will be determinative of the claim and Subcontractor will have waived any right to pursue the claim through the dispute resolution process set forth in this Section. ~~And, if Subcontractor attempts to pursue a claim through the arbitration process, the arbitrator shall enter an arbitration incorporating by reference the final determination of Contractor.~~

24.2  *Dispute Resolution of Claims between Contractor and Subcontractor.*

24.2.1  *Meeting Prior to Arbitration.*  If a dispute arises concerning the construction or interpretation of this Agreement, the meaning of this Agreement, a breach of this Agreement, enforcement of a lien filed by Subcontractor, or any other matter touching on or affecting this Agreement, the Parties shall ~~meet at Contractor's principal place of business or~~ conduct a conference by telephone concerning the disputed issues in an attempt to resolve the dispute. If, after reasonable notice or a written request to participate in such meeting or telephone conference, the Subcontractor indicates its unwillingness to do this obligation shall be waived and Contractor may immediately commence arbitration.

24.2.2  ~~Arbitration by Henning Arbitration and Mediation Services. If the Parties are unable to resolve the dispute among them during the meeting or telephone conference as described in Section 24.2.1, the dispute shall be submitted to binding arbitration by the Henning Mediation and Arbitration Service, Inc. ("Henning") based in Atlanta, Georgia, under that organization's then-current arbitration rules applicable to construction disputes. If Henning does not have construction rules specific to construction disputes, the matter shall be resolved under its general arbitration rules. That arbitration will be held at Contractor's offices in Woodstock, Georgia. (See Page 1 of this document for the~~ *[margin note: Neutral arbitrator in local of project site.]*

DocuSign Envelope ID: C90BE966-88D6-4236-A3C7-B0641B548D5C

FMGI Subcontract Agreement.
Subcontractor Initials: _____    FMGI Initials: _____
Project: Floor & Decor Baton Rouge G/U
Page 21 of 40

—address of those offices).

24.2.3.  *Commencement of Arbitration.* Each party to the arbitration shall pay equal amount of the fees assessed during the arbitration. If the party against whom arbitration is filed fails to pay his portion of the fees assessed against it ("non-paying party"), the opposing party may, but is not required to pay those fees in which case the non-paying party loses its right to reimbursement of attorneys' fees and costs if it is the prevailing party at the arbitration. The initial demand for arbitration may be served by the party commencing the arbitration (claimant) on the party against which the claim is asserted (respondent) via an overnight delivery service, certified mail—return receipt requested, or any courier service.

24.2.4.  *Pre-Arbitration Conference.* The arbitrator shall conduct a pre-arbitration conference with the parties to the arbitration to clarify the issues to be presented at the arbitration.

24.2.5.  *Witness List.* The parties shall exchange witness lists no later than Ten (10) days prior to the date set for the arbitration hearing. The witness list shall designate for each witness whether the witness "will be at the arbitration" or "may be at the arbitration." If a witness is designated as "will be at the arbitration," it is that party's responsibility to ensure that the witness is present at the arbitration. If a witness listed as "will be at the arbitration" fails to attend the arbitration, the opposing party shall be entitled to a postponement of the arbitration. The party who failed to produce the witness must pay for all costs associated with postponing the arbitration. Such costs will not reimbursed under Section 24.9 of this Agreement if that party is the prevailing party. If a party fails to provide a witness list, he may testify himself and cross-examine witnesses called by the other party in the arbitration, but shall be precluded from calling any witnesses.

24.2.6.  *Exhibit Lists.* Each party shall prepare and submit to the arbitrator and the opposing party the exhibits to be used at the arbitration. To the extent possible, the parties shall attempt to prepare a joint exhibit book to be used. The exhibits must be exchanged no later than Ten (10) days prior to the arbitration. If a party fails to provide an exhibit list, he may use the exhibits introduced into evidence by the opposing party, but shall be precluded from introducing any exhibits into evidence. The arbitrator shall not consider or allow into evidence any exhibits not contained in the exhibit books.

24.2.7.  *Stipulated Facts.* To the maximum extent possible, the parties shall attempt to provide a stipulation of relevant facts. Such stipulated facts shall be filed with Henning and the arbitrator no less than Three (3) business days prior to the date of the arbitration hearing. Together with the stipulated facts, each party shall submit a set of facts on which that party believes a dispute exists.

24.2.8.  *Settlement Negotiations.* Settlement discussions or negotiations shall be admissible as evidence to the extent they are admissible under the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

24.2.9.  *Losing Party Pays.* The party who fails to prevail at the arbitration ("non-prevailing party") shall bear the entire cost of the arbitration, including payment of the arbitrator's fees, and any administrative fees by Henning. The non-prevailing party shall also reimburse the prevailing party for actual costs, and reasonable attorneys' fees incurred by it from the beginning of the dispute through any appeal of the arbitration award. If it is not apparent from the outcome of the arbitration which party is the prevailing party, the arbitrator shall make a finding as to which party is the prevailing party. The arbitrator may also determine that neither party was the prevailing party in which case each party shall bear its own attorneys' fees and costs.

24.2.10. *Interest on Arbitration Award.* Any monetary arbitration award shall bear interest at the Prime Interest Rate as published in the Wall Street Journal until the award is paid.

24.2.11. *Conflict with Henning Rules.* If the terms of this document conflict with the Henning arbitration rules, this Agreement shall prevail to the extent they conflict.

24.2.12. *Conflict with State Law.* If the law of the State in which the Project is located prohibits

DocuSign Envelope ID: C90BE966-63D6-4236-A3C7-805418548D5C

FMGI Subcontract Agreement
Subcontractor Initials: ___    FMGI Initials: ___
Project: Floor & Decor Baton Rouge O/U
Page 22 of 40

~~or makes unenforceable an arbitration provision that specifies the arbitration occur in a State other than where the Project is located, the arbitration hearing shall be held at a mutually agreeable location located in the same City as the Project.~~

24.2.13. *Flow Down.* Subcontractor shall assure that the requirement to arbitrate all claims, including, but not limited to, lien foreclosure claims is included in Subcontractor's contracts and agreements with its sub-subcontractors, materialmen, vendors, and/or suppliers.

24.3 **Acknowledgement of Claims and Dispute Resolution Provisions.** Subcontractor acknowledges that it has read and understand the provisions applicable to Claims and Dispute Resolution, and agrees to those provisions. Subcontractor also agrees to include such provision in all subcontracts with its Sub-subcontractors.

25. **Miscellaneous.**

25.1. ~~If Contractor enters on the premises and terminates Subcontractor's work as provided in this Agreement, Subcontractor shall not be entitled to receive any payment under this Agreement that might otherwise be due it, unless and until said work is completed and payment in full for the work is made by Owner to Contractor.~~

25.2 If the Parties are unable to agree on a reasonable sum to be paid to Subcontractor on the basis of the work actually performed by Subcontractor, or if there is any other dispute of any type between Subcontractor and Contractor, Subcontractor and Contractor agree any dispute between them shall be resolved under the dispute resolution provisions contained in Section 24 of this Agreement.

25.3 If arbitration of a dispute is precluded by operation of any Federal, State, or local statute, regulation, ordinance, or firmly established public policy, as announced by a Court, litigation of the dispute must be commenced in the ~~State or Superior Courts of Cherokee County, Georgia.~~ Those courts shall be the sole forum for the adjudication of any such dispute. ~~Subcontractor, by entering into this Agreement, expressly agrees to submit to the jurisdiction of the State and Superior Courts of Cherokee County, Georgia and the venue of those courts, whether or not the work was actually performed in Georgia and regardless of where the parties entered into this Agreement. Subcontractor waives any claim or assertion that the courts of Cherokee County, Georgia, constitute an inconvenient forum.~~

25.4 ~~If the law of the State in which the Project is located totally precludes arbitration of disputes between Contractor and Subcontractor and precludes the requirement that Subcontractor bring its claims in Georgia, Subcontractor must bring any claims that it has against Contractor in the State or Federal courts for and in the County in which Contractor's Registered Agent is located within the State where the Project is located.~~

26. ~~**Applicable Law.** This Agreement is to be considered to be a contract made in the State of Georgia regardless of the place the last signature on this Agreement of the location of the Project. Subcontractor and Contractor agree that the internal, substantive laws of the State of Georgia without regard to the conflicts of laws rules shall be applicable to the interpretation or construction of this Agreement, and to any dispute between Subcontractor and Contractor that touches in any way on this Agreement.~~

27. **Liquidated Damages.** If the Contract Documents provide for liquidated damages beyond the completion or other dates set forth in the Contract Documents and such liquidated damages are assessed against Contractor, Contractor may assess the same against Subcontractor in proportion to Subcontractor's share of the responsibility for the delay triggering the liquidated damages. ~~Subcontractor waives any defense that such liquidated damages are void as penalties or are no reasonably related to actual damages, regardless of whether such damages were specifically established by Contractor and Subcontractor under this Agreement or were established in the other Contract Documents.~~ The amount of liquidated damages assessed against Subcontractor shall not exceed the amount assessed against Contractor. ~~Liquidated damages, as assessed against Contractor for Subcontractor's acts or omissions, may be but one item of the actual damages that may be incurred by Contractor and constitute only one aspect of damages that may be assessed by Contractor against Subcontractor. The proportionate assessment of liquidated damages shall not limit Contractor's right to collect from Contractor and/or its surety (if any), and Subcontractor and its surety, shall be liable to Contractor for any and all actual damages incurred by Contractor as a result of the acts or omissions of~~

DocuSign Envelope ID: C906E906-63D6-4239-A3C7-80541B548DSC

FMGI Subcontract Agreement
Subcontractor Initials: _____    FMGI Initials: _____
Project: Floor & Decor Baton Rouge G/1.
Page 23 of 48
~~Subcontractor~~

28. **Privity.** Until final completion of the Project, Subcontractor agrees not to perform any work directly for the Owner or any tenants of the Owner, or deal directly with the Owner's representatives in connection with the Project, unless directed otherwise by Contractor in writing. All work for this Project performed by Subcontractor shall be processed and handled exclusively by Contractor. ~~If Subcontractor contacts the Owner directly for any reason without the express, written permission of Contractor, that contact shall constitute a material breach of this Agreement, and Contractor shall be relieved of any obligation to pay Subcontractor any amounts due or to become due to Subcontractor until Contractor has had the opportunity to assess the monetary damages that such contact has caused Contractor.~~

29. **Stormwater Discharge.** If required by Contractor, Subcontractor shall sign a certification confirming that they will comply with Project-wide General Permit to Stormwater Discharges. If required by Contractor, earthwork Subcontractors shall also sign the NPDES and E&S Permits.

30. ~~**Attorneys' Fees and Costs.** If, after default by Subcontractor, Contractor, in its sole and absolute discretion, deems it necessary to employ an attorney to assert any right it has under this Agreement against Subcontractor or enforce any obligation that Subcontractor has under this Agreement, Contractor shall be entitled to recover the actual costs, and reasonable attorneys' fees incurred by Contractor on the matter. The term costs, in conjunction with the litigation or arbitration, shall include, but not limited to, filing fees, transcript costs, court reporter fees, courier services, postage, subpoena costs, process server fees, expert witness fees, reproduction costs (including, but not limited to, photocopying or the cost of producing items electronically on a portable hard drive, CD, or flash drive), any and all travel related costs (airfare, rental cars, hotels, meals, mileage, parking, etc.) associated with attending any depositions or hearing, arbitrator fees, and photocopying.~~

31. **Governmental Fines or Investigations.** If Contractor is assessed any fine by any governmental authority, including, but not limited to OSHA, incurs any cost in responding to a governmental investigation, or incurs any attorneys' fees with respect to any alleged violation of any State, Federal, or local statute, rule, or regulation because of any act or omission of Subcontractor, Subcontractor shall reimburse Contractor for any such fine, costs, and/or reasonable attorneys' fees.

32. **Supervision.**

321. *Job Superintendent/Foreman.* Subcontractor shall keep on the worksite of the Project during its progress a competent Job Superintendent or Foreman, and any necessary assistants, all reasonably satisfactory to Contractor. ~~All directions or notices given to Subcontractor's Job Superintendent or Foreman shall be binding on Subcontractor.~~ Contractor may reject any Job Superintendent, any Foreman, or any of their assistants assigned by Subcontractor to the Project, based on That rejection must be in writing. Subcontractor must then assign a new Job Superintendent, a reasonable new Foreman, or a new assistant who is satisfactory to Contractor. objections.

322. *Project Notebook.* Subcontractor's Job Superintendent or Foreman shall maintain a Project we utilize daily Notebook on a daily basis. That notebook shall include notes on problems and potential reports in lieu of problems. Photocopies of these notes shall be provided to Contractor on request. notebooks

33. **Communication with Owner.** ~~Neither Subcontractor nor its legal representative or agent will initiate communicate, either orally or in writing, directly with Owner or Owner's representative.~~ Should Owner communicate with Subcontractor, Subcontractor shall assure that any response to that communication is also sent to Contractor pursuant to the Notice provision contained in this Agreement.

34. **Mutual Responsibility of Subcontractor.** If Subcontractor, any sub-subcontractor, or any materialman, in connection with work on the Project or delivery of goods, labor, materials, or supplies to the Project, causes damage to the work or property of any other person or entity working on the Project, Subcontractor shall compensate the damaged person or entity for the damage caused. If the damaged person or entity brings a claim or threatens to bring a claim against Contractor because of such damage, Contractor will notify Subcontractor of that claim. To the extent that any person or entity has been damaged because of the act or omission of Subcontractor, any Sub-subcontractor, or any materialman, Subcontractor shall indemnify, hold harmless, and defend Contractor from and against all claims, ~~threatened claims,~~ damages, losses, expenses of litigation, and other expenses, including, but not limited to, reasonable attorneys' fees arising out of or resulting from any such act or omission.

35. **Extra Work and Change Orders.**

FMGI Subcontract Agreement.
Subcontractor Initials: _____ FMGI Initials: _____
Project: Floor & Decor Baton Rouge G/U
Page 24 of 40

35.1. *Timing of Proposed Change Orders.* Subcontractor shall submit a request for a change order to Contractor when it is apparent that Contractor has requested additional work beyond Subcontractor's scope of work. The written request for change order must be submitted by Subcontractor to Contractor within five (5) days of commencing the additional work. ~~If Subcontractor fails to submit the written request for a change order within the time specified in this Section 32.1 Subcontractor waives any and all rights to claim additional compensation for that additional work. The proposed Change Order must be approved, in writing, by Contractor.~~

35.2. ~~*No Right to Payment without Authorized Change Order.* Subcontractor understands and agrees that additional work completed by it without a written Change Order approved and signed by Contractor will not entitle Subcontractor to collect from Contractor under any legal theory, including, but not limited to, a legal theory based in contract, a legal theory based in tort, a legal theory based on a Federal, State or Local ordinance, rule, regulation, or statute or the legal theories of quantum meruit and/or unjust enrichment.~~ *(handwritten: We've already started change order work under your direction without an authorized change order.)*

*(handwritten: ok / M)*

35.3. ~~*No Right to Lien for Additional Work Completed Without Authorized Change Order.* Subcontractor understands and agrees it has no right to lien the Project for any additional work completed by it without a written change order approved and signed by Contractor.~~

35.4. ~~*Subcontractor's Responsibility for Assuring that Authorized Representative of Contractor Has Signed Change Order.* It is Subcontractor's responsibility to confirm the person signing on behalf of Owner has the authority to do so. Contractor's Job Superintendent and Assistant Job Superintendent have no authority to approve proposed change orders.~~

35.5. *Delivery of Proposed Change Order.* Subcontractor may submit an electronic copy of the proposed change order ~~so long as a hard copy is also sent.~~ The proposed change order must be submitted by Subcontractor to the Project Manager assigned by Contractor to the Project.

36. Notices.

36.1. *Manner of Giving Written Notices.* Any notices required or permitted to be made in writing under this Agreement must be sent via email and a delivery method that requires a signature to effectuate delivery to the email addresses and physical addresses set forth below:

*(handwritten: ✓ Change order will be processed with executed contract.)*

If to Contractor:

Email Address: davin.ross@fmgi-inc.com
Physical Address: FMGI, Inc.
130 Arnold Mill Park, Suite 100
Woodstock, GA 30188

*(handwritten: The change order referenced above was sent to others and we were directed to proceed. What now?)*

With a Photocopy to:
Email Address: lpostle@windspring.com
Physical Address: Lionel J. Postle, P.C.
4430 Wade Green Road, Suite 180-105
Kennesaw, GA 30144

*(handwritten: The change order referenced was not copied to this email. What do we need to do now?)*

36.2. Any Party to this Agreement may change his email address or physical address by merely giving written notice of such change to the other Party.

37. **Severability.** If any provision of this Agreement or its application to any person or circumstance shall be invalid, illegal, or unenforceable to any extent, the remainder of this Agreement and its application shall not be affected and shall be enforceable to the fullest extent permitted by law.

38. **Construction and Interpretation of Agreement.** Whenever the singular number is used in this Agreement and when required by the context, the same shall include the plural and vice versa, and the masculine gender shall include the feminine and neuter genders and vice versa. This Agreement shall not be construed or interpreted for or against a party to this Agreement merely because that party or that party's legal representative drafted this Agreement.

39. **Headings of the Sections.** The headings of the Section in the Agreement are for convenience only and are in no way intended to describe, interpret, define, or limit the scope, extent, or intent of this Agreement.

40. **Compliance with Law.**

40.1. Subcontractor shall assure that the work completed by it at the Project complies with all local, State, or Federal building codes, laws, ordinances, regulations, rules, or statutes including, but



DocuSign Envelope ID: C80BE966-63C6-4239-A3C7-50541B948D6C

not limited to the following:

    40.1.1.   All Environmental Laws (Federal and State) to the extent that they are applicable to the Scope of Work;

    40.1.2.   All Safety Laws;

    40.1.3.   All Worker Verification Laws and/or laws (Federal and State) applicable to immigration compliance.

40.2    *Immigration Compliance.*

    40.2.1.   Subcontractor warrants that it is now, and will continue to be throughout its performance of the Work, in full compliance with the Immigration Reform and Control Act of 1986 ("IRCA"), including, but not limited to, its Form I-9 employer verification provisions, the Immigration and Nationality Act ("INA"), the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), and any future changes to the acts, as well as all other applicable Federal, State, and local immigration laws and regulations.

    40.2.2.   Subcontractor shall not knowingly hire or continue to employ any person who is not duly authorized to work in the United States.

    40.2.3.   Subcontractor warrants that it has a Form I-9 verification policy that it administers uniformly throughout the company.

    40.2.4.   Subcontractor warrants that it will notify Contractor immediately in writing and by in-person voice communication (not voicemail) of any unscheduled inspection, worksite enforcement action, investigation, inquiry, visit, or audit by the United States Department of Homeland Security ("DHS") or any other governmental agency or authority related to immigration issues of Contractor, Subcontractor, lower-tier subcontractors, and their corresponding employees and/or agents. Should Subcontractor ever be made aware of or receive any Notice of Inspection, Subpoena, Warrant, or any other request by a government agency regarding its employer verification practices or records, or a Request for Inspection of its I-9 forms, by DHS or United States Department of Labor ("DOL"), it will, within one (1) business day, notify Contractor of such, and will subsequently provide a detailed explanation of Subcontractor's response and the results of the Notice of Inspection or Notice of Intent to Fine or I-9 inspection/audit request or any other inquiry. This obligation applies as well to any compliance notices received from any applicable state authority. Furthermore, Subcontractor warrants that during the term of this Contract, it shall and shall cause its directors, officers, managers, agents, and employees to fully cooperate in all respects with any audit, inquiry, inspection, investigation conducted by the DHS, DOL, or any other applicable Federal, State, or local regulatory agencies of Subcontractor or any of its employees or the employees of their lower-tier subcontractors.

    40.2.5.   Subcontractor will comply with any and all of the requirements applicable to immigration compliance contained within any of the Contract Documents, including, but not limited to, review of I-9s and providing such I-9s and supporting documentation to Contractor and Owner as requested in writing by Contractor, Owner, or any person or entity acting on behalf of Contractor or Owner.

40.3    Should Subcontractor's work fail to comply with all local, State, or Federal building codes, laws, ordinances, regulations, rules, or statutes, Subcontractor shall indemnify and hold Contractor and/or Owner for any and all amounts expended by it because of such non-compliance.

40.4    Subcontractor shall be responsible to Contractor and/or Owner for the acts and omissions of Subcontractor's employees, Sub-subcontractors, and their respective agents and employees and all other persons performing portions of the Scope of Work under the direction of Subcontractor or any of its Sub-subcontractors.

41.    **Signatures and Copies.** Digital, electronic, PDF, or facsimile signatures on this Agreement shall have the same legal effect as original signatures. Digital versions, electronic versions, PDF versions, or photocopies of this Agreement shall have the same legal effect as an original of the document.

42.    **Survival.** The following sections shall survive completion of the Scope of Work under this Agreement and/or termination of this Agreement regardless of which Party terminates the Agreement and regardless of the reason for the termination:

DocuSign Envelope ID: C908E968-63D6-4239-A9C7-905418548D5C

FMGI Subcontract Agreement
Subcontractor Initials: **AA.** _____    FMGI Initials: _____
Project: Floor & Decor Baton Rouge G/U
Page 26 of 40

42.1.  Section 3—Disputes Concerning Scope of Work;
42.2.  Section 6 and its subsections—Progress;
42.3.  Section 7—Contract Documents;
42.4.  Section 8 and its subsections—Inspection/Uncovering of Work;
42.5.  Section 10 and its subsections—Warranty;
42.6.  Section 12 and its subsections—Workmanship and Performance;
42.7.  Section 14 and its subsections—Delays in Work;
42.8.  Section 17 and its subsections—Indemnification Covenant;
42.9.  Section 18—Cleaning;
42.10.  Section 24 and its subsections—Claims and Disputes;
42.11.  Section 25 and its subsections—Choice of Courts;
42.12.  Section 26—Applicable Law;
42.13.  Section 27—Liquidated Damages;
42.14.  Section 30—Attorneys' Fees and Costs;
42.15.  Section 31—Governmental Fines or Investigations;
42.16.  Section 36 and its subsections—Notices;
42.17.  Section 41—Signatures and Copies; and,
42.18.  Section 43—Waiver of Trial by Jury.

43.  ~~Waiver of Trial by Jury. The Parties waive any right that they have to a trial by jury of any claim brought under the Agreement, concerning this Agreement, or otherwise touching on or concerning this Agreement. This waiver is effective whether the claim is submitted to arbitration as required by Section 24 of this Agreement and its subsections, or submitted to litigation in any Court.~~

44.  **Entire Agreements.** THIS AGREEMENT CONSTITUTES THE ENTIRE UNDERSTANDING AND AGREEMENT OF SUBCONTRACTOR AND CONTRACTOR WITH RESPECT TO THE SUBJECT MATTER CONTAINED IN THIS AGREEMENT. ANY AND ALL PRIOR AGREEMENTS, UNDERSTANDINGS, OR REPRESENTATIONS, WHETHER ORAL OR WRITTEN, BY OR AMONG SUBCONTRACTOR AND CONTRACTOR OR THEIR AGENTS, DIRECTORS, EMPLOYEES, OFFICERS, OR SERVANTS ARE ENTIRELY SUPERSEDED, TERMINATED, CANCELED, AND HAVE NO FURTHER FORCE OR EFFECT. ANY MODIFICATION OF, OR SUPPLEMENT TO, THIS AGREEMENT MUST BE IN WRITING AND SIGNED BY BOTH CONTRACTOR AND SUBCONTRACTOR. IT IS THE RESPONSIBILITY OF SUBCONTRACTOR TO ASSURE THAT THE PERSON SIGNING ON BEHALF OF CONTRACTOR HAS THE AUTHORITY TO BIND THE CONTRACTOR.

| FMGI, Inc. ("Contractor") | SOUTH LA CONTRACTORS, LLC ("Subcontractor") |
|---|---|
| By: Luke Hardman    Blake Noble | By: _____ Bradford Melancon |
| Its: Vice President of Construction   BY: BN | Its: Owner |

DocuSign Envelope ID: C90BE966-83D6-4239 ⁀ ⁀7-B0541B548D5C

FMGI Subcontract Agreement
Subcontractor Initials: _____    FMGI Initials: _____
Project: Floor & Decor Baton Rouge G/U
Page 28 of 40

## Exhibit A

### Scope of Work

Contract Number:       2138-02
Subcontractor:         SOUTH LA CONTRACTORS, LLC
Scope of Work:         Site Work
Cost Code:             02.021400 Erosion Control
                       02.021800 Site Demolition
                       02.022000 Site Grading & Earthwork
                       02.022300 Storm Water
Project Start Date:    8/9/2021
Project End Date:      3/14/2022

Scope:

I.  Subcontractor shall furnish materials, labor, and equipment to complete the **Site Work** scope of work per plans and specs prepared by **Linfield, Huter, Junius, Inc.**

II. Scope includes but is not limited to; provide everything lifting, hoisting, equipment, and materials necessary to complete your scope of work.

A. SITE WORK
1.  ~~Provide MOT for your scope of work~~
2.  Supply and install all erosion control as specified
3.  Demo areas as specified on plans and clear site for improvements
4.  Undercut and import as necessary for building pad & site concrete
5.  Furnish and install stone under building slab
6.  Furnish and install Mirafi 600 X as specified
7.  Supply and install subgrade and base per plans
8.  ~~Supply and install curbing per plans~~
9.  ~~Supply and install ADA ramps & Tactile surfaces as specified~~
10. Final grade and dress
11. Provide ~~surveying and~~ as-built drawings for your scope of work  red line as-builts only

B. UNDERGROUND UTILITIES
12. Furnish and install drainage system per plans and specifications
13. Furnish and install Contech CDS System with manhole as specified
14. Furnish and install dewatering system as needed to complete your scope
15. ~~Provide MOT for your scope of work~~
16. Final grade and dress
17. Provide ~~surveying and~~ as-built drawings for your scope  red line as-builts only

B. GENERAL REQUIREMENTS
1.  ~~Complete all necessary tests and documentation required~~ will coordinate testing with Contractor
2.  Coordinate with FMGI and any other subcontractors necessary to complete your scope.
3.  Comply all FMGI and OSHA'S safety rules and regulations including wearing a safety harness while operating a scissor lift, all scissor lifts must have a spotter. Wear a hard hat and a safety-colored vest or company shirt at all times.
4.  Per plans and specifications dated 05/07/2021 - 100% Construction Documents
5.  Includes all Addendums

C. WARRANTY
1.  Provide one (1) year workmanship warranty
2.  Provide standard manufacturer's warranty

